# FIDELITY NATIONAL BANK & TRUST COMPANY OF KANSAS CITY ET AL. *v.* SWOPE ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 46. Argued April 29, 30, 1926.—Decided April 11, 1927.

1. Where jurisdiction of the District Court was based on diverse citizenship as well as the constitutional question raised by the bill, its decree was appealable to the Circuit Court of Appeals, (Jud. Code § 128), and the decree of that court appealable here, under Jud. Code § 241, before amendment. P. 125.

2. In a suit under § 28 of Art. VIII of the Kansas City Charter, to validate a special improvement ordinance and proposed assessments of the cost on the lands within the benefit district described in the ordinance, notice to the property owners by publication in a local newspaper is sufficient to constitute due process. Pp. 130, 134.

3. A proceeding under § 28 of Art. VIII of the Kansas City Charter, brought in a state court of plenary jurisdiction by the City against the owners of property in a benefit district for the purpose of determining the validity of an ordinance authorizing a special improvement and of proposed assessments and liens under the ordinance, is a judicial proceeding in which the sole duty of the court is to pass on questions of law and to inquire judicially into the facts only so far as necessary in applying the law—a " case " or " controversy," within the meaning of Const. Art. III, § 2; and a judgment validating the ordinance and proposed liens is *res judicata*, preventing further litigation of these matters by the property owner or his privies in the state or federal courts, otherwise than by appeal. P. 130.

4. A decision of the state supreme court determining the effect of judgments in such proceedings, as *res judicata*, must be accepted by this Court, though rendered after the litigation which raised the question in this Court was begun. P. 134.

5. In a suit of the kind above described, the contractor who subsequently does the improvement work, and those to whom he assigns the tax bills he receives in payment are represented by the City; so that the estoppel may be availed of by such assignees in a suit by a property owner to annul their tax bills. P. 135.

6. Award of process of execution is not an indispensable adjunct to exercise of the judicial function. P. 132.

2 F. (2d) 676, reversed.

APPEAL from a decree of the Circuit Court of Appeals which affirmed a decree of the District Court (274 Fed. 801) adjudging void and canceling certain tax bills, held by appellants, which had been issued to defray the cost of grading a boulevard in Kansas City.

*Messrs. Frank P. Barker* and *Justin D. Bowersock,* with whom *Messrs. Samuel J. McCulloch* and *Hunter M. Meriwether* were on the brief, for appellants.

*Mr. Elliott H. Jones,* with whom *Messrs. W. C. Scarritt, Edward S. North,* and *A. D. Scarritt* were on the brief, for appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

Appellees brought suit in the District Court for western Missouri to have certain assessments of benefits on their lands for the alleged pro rata share of the cost of grading Meyer Boulevard in Kansas City declared null and void, and to have canceled certain tax bills issued to defray the cost of grading. Appellants are the holders of these bills which they acquired by purchase. The jurisdiction of the district court rested upon diversity of citizenship and the allegation in the bill that the assessments and the proceedings had in levying them violated the due process clause of the Fourteenth Amendment. The district court, after trial, gave judgment for the relief prayed, 274 Fed. 801, which was affirmed by the court of appeals for the eighth circuit. 2 F. (2d) 676.

Since the jurisdiction of the district court was based upon grounds in addition to the constitutional question raised by the bill, the appeal was rightly taken to the circuit court of appeals. Jud. Code, § 128. The case is properly here on appeal from that court. Jud. Code, § 241, before amended. *Risty* v. *Chicago, R. I. & Pac. Ry. Co.,* 270 U. S. 378; *Weiland* v. *Pioneer Irrigation Co.,* 259 U. S. 498.

The city council of Kansas City, by ordinance adopted in 1915, authorized the present grading improvement. Meyer Boulevard, as projected, is a broad highway extending westwardly from Swope Park, a large public park in Kansas City, connecting with numerous boulevards extending north into the business section of the city. The boulevard varies from two hundred to five hundred feet in width. Provision is made for parkways between the

driveways so that, of the total improved area of thirty-one acres, approximately twenty acres are made up of a grass parkway. The carrying out of the project involved extensive grading and relatively large expense.

Section 3, Art. VIII of the Kansas City charter imposes the cost of ordinary street grading upon the owners of abutting property extending a limited distance from the street. But in view of the extraordinary character of the projected improvement of Meyer Boulevard, proceedings were had under § 28 of Art. VIII of the city charter. This section, printed so far as relevant in the margin,[1] establishes a procedure which may be followed for levying a special tax on any lands benefited when the improvement involves an " unusual amount of filling in or cutting or grading away . . . necessitating an expense of

---

[1] " When in grading or regrading any street, avenue, highway, or part thereof, a very large or unusual amount of filling in or cutting or grading away of earth or rock be necessary, necessitating an expense of such magnitude as to impose too heavy a burden on the land situate in the benefit district as limited in Section three . . . , the cost of grading or regrading such street, . . . may be charged as a special tax on parcels of land (exclusive of improvements) benefited thereby, after deducting the portion of the whole cost, if any, which the city may pay, and in proportion to the benefits accruing to the said several parcels of land, exclusive of improvements thereon, and not exceeding the amount of said benefit, said benefits to be determined by the Board of Public Works as hereinafter provided, and the limits within which parcels of land are benefited shall in all such specified instances be prescribed and determined by ordinance. . . .

" The public work described above shall be provided for by ordinance, and the city may provide that after the passage of the ordinance and after an approximate estimate of the cost of the work shall have been made by the Board of Public Works, the city shall file a proceeding in the Circuit Court of Jackson County, Missouri, in the name of the city, against the respective owners of land chargeable under the provisions of this section with the cost of such work. In such proceeding the city shall allege the passage and approval of the ordinance providing for the work, and the approximate estimate of the cost of said work; and shall define and set forth the limits of the

such magnitude as to impose too heavy a burden on the land situate in the benefit district as limited in Section three   . . ."

benefit district, prescribed by the ordinance, within which it is proposed to assess property for the payment of said work. The prayer of the petition shall be that the court find and determine the validity of said ordinance, and the question of whether or not the respective tracts of land within said benefit district shall be charged with the lien of said work in the manner provided by said ordinance.

" Service of process in such proceeding shall be governed by the provisions of Section eleven (11) of Article thirteen (XIII) of this Charter, relating to service of notice and summons in proceedings for the ascertainment of benefits and damages for the condemnation of land for parks and boulevards. In such proceedings, the city shall have the right to offer evidence tending to prove the validity of said ordinance, and said proposed lien against the respective lots, tracts and parcels of land within said benefit district sought to be charged with such lien; and the respective owners of lots, tracts and parcels of land within said benefit district shall have the right to introduce evidence tending to show the invalidity or lack of legality of said ordinance, and said proposed lien against the respective lots, tracts, and parcels of land owned by each respective defendant; and the court shall have the right to determine the question of whether or not the said lots, tracts and parcels of land owned by each defendant should be charged with such lien.

" The trial of such proceeding shall be in accordance with the Constitution and Laws of the State, and the court shall render judgment either validating such ordinance, and proposed lien against the lots, tracts and parcels of land within said benefit district or against such lots, tracts or parcels of land within said benefit district or against such lots, tracts, or parcels of land as the court may find legally chargeable with the same, or the court may render judgment that such ordinance or proposed lien are, in whole or in part, invalid and illegal.

"Any appeal taken from such judgment must be taken within ten days after the rendition of such judgment, or if a motion for a new trial be filed therein, then within ten days after such motion may be overruled or otherwise disposed of;   . . .

" If no appeal shall be taken, or after the determination of such appeal, the city may enter into a contract with the successful bidder

Following the prescribed procedure, the city council passed an ordinance authorizing the improvement now in question, fixing the boundaries of, the benefit district, which embraced the lands of appellees, and directing that the lands-within the district should be assessed for the cost of the improvement in proportion to their value as determined under the charter. The ordinance directed that suit be brought by the city in the circuit court of Jackson County against the property owners in the benefit district for the purpose of validating the ordinance and the liens for the cost of the improvements. The Board of Public Works having made its estimate of the approximate cost of the grading, suit was brought by the city in the Jackson County circuit court. Notice of the proceeding was given all owners of property within the benefit district by four weeks' publication in a designated local newspaper in accordance with the statute. Proof of service was approved by the court. The appellee Swope entered no appearance but the appellee Brown appeared and raised by answer numerous objections to the ordinance and assessment, including those pressed here. The material parts of the answer, set forth in the margin,[2] indicate the

to whom such work may be let; and, after the work under such contract shall have been fully completed, the estimate of cost thereof, and the apportionment of the same against the various lots, tracts and parcels of land within the benefit district, shall be made by the Board of Public Works according to the assessed value thereof, exclusive of improvements, with the assistance of the City Assessor as provided in Section three of this article, and all of the provisions of Section three of this article relating to the apportionment of special assessments, and the levy, issue and collection of special tax bills as in grading proceedings as in said section specified, shall apply to special tax bills issued pursuant to this section, . . ."

[2] "Said parties state that they are the defendants herein and the owners of said property, and that said property does not abut on Meyer Boulevard; that the South line thereof is a quarter of a mile from said boulevard, and the north line thereof is a half mile from

scope of this proceeding.  After a hearing, the court entered its judgment declaring valid the ordinance and the proposed assessments and liens, when effectuated in accordance with the ordinance.  The motion of the appellee Brown for a new trial was denied.  No appeal was taken from the decree of the court, which thus became final.  The city then let the contracts for the improvements, which have been completed.  The costs have been apportioned according to the valuation of the lands made by the city assessor, and tax bills, including those held by appellants, issued against the several tracts for the proportionate part of the special benefit tax assessed.

In this suit to cancel the tax bills so issued, appellees alleged that § 28 of Art. VIII of the charter and the

said Meyer Boulevard.  Said defendants state that their property is not directly benefited by the opening of said boulevard, and is only remotely benefited, as all other property in Kansas City is.  That the property of defendants, above described, lines on one boulevard, to-wit: Swope Parkway, upon which is operated a street car line, and it can derive no particular and special benefit from the grading of said Meyer Boulevard.  That the grading of said boulevard will greatly enhance the value of the property abutting on said boulevard, and yet, in the apportionment of the cost of said grading, the property of said defendants, fronting on said Swope Parkway, may be assessed at as great a sum as the property on said Meyer Boulevard, and the effect would be that the special tax levied thereunder against the property of defendants may equal, acre for acre, the special tax assessed against the property immediately benefited, to-wit: the property abutting on said Meyer Boulevard.

" Defendants further state, that for the reasons, aforesaid, it would be illegal and improper for the court to declare this ordinance valid, and it would also be illegal for the reason that on its face thereof, the charter provision authorizing this proceeding is void, for the reason that it violates the Constitution of Missouri, and the Constitution of the United States.  It would be just as legal to provide that because the paving of said Meyer Boulevard was of an unusual width, and the cost of paving thereof excessive, that the land within half a mile of said boulevard should pay in proportion to its value for the paving of same."

55514°—28——9

city ordinance and all proceedings under them violated the Constitution of the United States; that the levying of the tax was an arbitrary and abusive exercise of legislative authority, in that (1) the improvement was general rather than local; (2) that the method of fixing the benefit district was arbitrary, discriminatory and unreasonable, and (3) that the assessment according to the value of the lands benefited, regardless of their remoteness from the improvement, resulted in an assessment greatly exceeding the benefits.

Appellants at the outset argue that all the objections made to the assessments here were open and hence decided against appellees in the proceeding in the Jackson County circuit court, and that its judgment is not open to collateral attack in this or in any other suit, since the issues which might have been litigated there are *res adjudicata* here.

The proceedings in the circuit court were had upon sufficient notice to constitute due process in proceedings of this character. *Lent* v. *Tillson,* 140 U. S. 316; cf. *North Laramie Land Co.* v. *Hoffman,* 268 U. S. 276. The parties to it are concluded by the judgment if the proceeding was judicial rather than legislative or administrative in character. Both courts below held that the questions here in controversy at the time of the hearing in the state court were "moot"; and, even if their adjudication was authorized by the legislature and was specifically made by the circuit court, it would not be binding upon the parties in the federal courts.

But if the determination of the state court was *res adjudicata* according to its laws and procedure, no reason is suggested, nor are we able to perceive any, why it is not to be deemed *res adjudicata* here, if the proceeding in the state court was a " case " or " controversy " within the appellate jurisdiction of this Court, Fed. Const. Art. III, § 2, so that constitutional rights asserted, or which

might have been asserted in that proceeding, could eventually have been reviewed here.

That this proceeding authorized by § 28 of the Kansas City charter was judicial in character appears from an inspection of the statute and the record in the circuit court. The proposed improvement having been authorized, the benefit district established, the estimated cost ascertained, all by action of the city council or the board of public works essentially legislative in character, the jurisdiction of the state court was invoked in an adversary proceeding to determine the validity of the liens imposed or to be imposed under the ordinance. That court is a court of general jurisdiction, having plenary power to determine all questions arising under the state law or the laws and Constitution of the United States. Section 2436 Mo. Rev. Stat. 1919; *Schmelzer* v. *Kansas City,* 295 Mo. 322. These questions are required to be determined in a trial in accordance with the laws and constitution of the State. The sole duty and power of the court is to pass upon questions of law and to inquire judicially into the facts so far as necessary to ascertain the applicable rules of law. See *Keller* v. *Potomac Elec. Co.,* 261 U. S. 428, 440. Under this procedure, the judgment to be awarded finally determines, subject to appeal, the validity of the ordinance authorizing the improvement, the limits of the benefit district, the method of apportioning benefits, and the validity of the proposed liens. That the issues thus raised and judicially determined would constitute a case or controversy if raised and determined in a suit brought by the taxpayer to enjoin further proceedings under the ordinance could not fairly be questioned. Compare *Risty* v. *Chicago, R. I. & Pac. Ry. Co., supra.* They cannot be deemed any the less so because through a modified procedure the parties are reversed and the same issues are raised and finally determined at the behest of the city. We do not think sig-

nificant the fact that under § 28 the city might pay, though it did not, a part of the cost of the improvement and that the council, in authorizing the special tax, is required to deduct from the estimated cost the amount which may be paid by the city. These provisions could not restrict the authority or capacity of the court to pass upon the validity of the benefit district and the special tax actually authorized by the ordinance.

While ordinarily a case or judicial controversy results in a judgment requiring award of process of execution to carry it into effect, such relief is not an indispensable adjunct to the exercise of the judicial function. Naturalization proceedings, *Tutun* v. *United States,* 270 U. S. 568; suits to determine a matrimonial or other status; suits for instructions to a trustee or for the construction of a will, *Traphagen* v. *Levy,* 45 N. J. Eq. 448; bills of interpleader, so far as the stakeholder is concerned, *Wakeman* v. *Kingsland,* 46 N. J. Eq. 113; bills to quiet title where the plaintiff rests his claim on adverse possession, *Sharon* v. *Tucker,* 144 U. S. 533; are familiar examples of judicial proceedings which result in an adjudication of the rights of litigants, although execution is not necessary to carry the judgment into effect, in the sense that no damages are required to be paid or acts to be performed by the parties. Cf. *Kennedy* v. *Babcock,* 19 Misc. (N. Y.) 87; *Cohen* v. *N. Y. Mutual Life Ins. Co.,* 50 N. Y. 610, 625. Nor is it essential that only established and generally recognized forms of remedy should be invoked. " Whenever the law provides a remedy enforceable in the courts according to the regular course of legal procedure, and that remedy is pursued, there arises a case within the meaning of the Constitution, whether the subject of the litigation be property or status." *Tutun* v. *United States, supra,* 577. Thus, naturalization proceedings, *Tutun* v. *United States, supra,* or a special statutory proceeding to determine judicially whether the claim made by a domestic corporation

against a foreign country upon which an award had been made by a United States commissioner pursuant to treaty, had been furthered by fraud, the statute authorizing distribution of the fund in accordance with the judgment, *La Abra Silver Mining Co.* v. *United States,* 175 U. S. 423, are cases or controversies within the meaning of the Constitution.

*Tregea* v. *Modesto Irrigation District,* 164 U. S. 179, is cited as authority for the proposition that the proceeding had in the Missouri court is not judicial in character. But this Court in that case rested its decision on its interpretation of the California statute in question. It held in effect that the proceeding authorized was not adversary, being a proceeding by the trustee of an irrigation district against the district itself, and that it was essentially *ex parte,* its purpose being to secure evidence on the basis of which the court could render an advisory opinion as to the validity of a pending bond issue. These were considerations which could only lead to the conclusion reached that the proceeding was not a case or controversy of which this Court could take cognizance in the exercise of its appellate jurisdiction.

The present statute admits of no such construction. The proceeding is in terms directed to be " against the respective owners of land chargeable under the provisions of this section with the cost of such work," and the specific issue to be determined by the judgment of the court is whether or not the respective tracts in the benefit district shall be charged with the lien as provided by the ordinance. The court is directed to render judgment " either validating such ordinance, and proposed lien against the lots,  . . .  within said benefit district or against such lots,  . . .  as the court may find legally chargeable,  . . .  or the court may render judgment that such ordinance or proposed lien are, in whole or in part, invalid and illegal." The plain effect of these provisions is to

authorize the court to examine and determine the validity and effect of the legislative action in establishing the benefit district. The result of the proceeding is to establish judicially as against the property owners in the district the validity of such action and of the liens established or to be established conformably to the statute on the specific property described.

The issues presented and the subject matter are such that the judicial power is capable of acting upon them. There is no want of adverse parties necessary to the creation of a controversy as in *Muskrat* v. *United States,* 219 U. S. 346. The judgment is not merely advisory as in *Liberty Warehouse Co.* v. *Grannis,* 273 U. S. 70; *New Jersey* v. *Sargent,* 269 U. S. 328; *Fairchild* v. *Hughes,* 258 U. S. 126; *Massachusetts* v. *Mellon,* 262 U. S. 447; *Texas* v. *Interstate Commerce Commission,* 258 U. S. 158, 162. It operates to determine judicially the legal limits of the benefit district and to define rights of the parties in lands specifically described in the pleadings. So far as it affects owners of land in the benefit district who are citizens of other states, the controversy is a " suit " which may be removed to the federal courts. Jud. Code, § 28; *Road District* v. *St. Louis Southwestern Ry.,* 257 U. S. 547.

That the judgment is binding on the parties and their privies and hence not open to collateral attack would seem to be the only reasonable construction of the statute if that question were for us to decide. But the Supreme Court of Missouri, since the pendency of the present suit, has held that the judgment rendered by the Jackson County Circuit Court in a similar proceeding is not open to collateral attack by the property owners within the benefit district, and that such property owners may not litigate, in another suit, questions, including the constitutionality under the Fourteenth Amendment of the assessments levied, which might have been raised in the circuit court proceeding. *Schmelzer* v. *Kansas City, supra.* This decision, although subsequent to the insti-

tution of the present suit, effected no change in the local law, upon which appellees had relied. It must be accepted as establishing the effect as *res adjudicata* of the proceeding had under the Missouri statute. Compare *Edward Hines Trustees* v. *Martin,* 268 U. S. 458.

Whether the proceeding be regarded as an action *in rem, Christianson* v. *King County,* 239 U. S. 356, 373, or an action *in personam,* there is in the two litigations a sufficient identity of issues and of parties to conclude the parties to the present suit. *United States* v. *California Bridge Co.,* 245 U. S. 337, 341. Viewed as an action *in personam,* appellants acquired their title to the tax bills by purchase from the contractor, whose right to them was derived through the exercise by the city of powers adjudicated in the circuit court proceedings to be in it and properly exercised by it. As to those powers, and hence their rights originating in the exercise of them, appellants were represented by the city and may take the benefit of the judgment in its favor. *United States* v. *California Bridge Co., supra,* 341.

*Judgment reversed.*