**BRYAN v. BRYAN et al.**

No. 3275.

United States District Court
E. D. South Carolina, Florence Division.

Sept. 26, 1952.

Shuler & Harrell, Kingstree, S. C., Henry E. Davis, Florence, S. C., for plaintiff.

Connor & Connor, Kingstree, S. C., Willcox, Hardee, Houck & Palmer, Florence, S. C., for defendants.

WILLIAMS, District Judge.

This is an action in equity to set aside a judgment at law on the ground that it was obtained through fraud, and that the enforcement thereof would be in violation of the First Section of the Fourteenth Amendment of the United States Constitution.

In November, 1948, the defendants, Elizabeth J. Bryan, Harry O. Lifrage and Vivian B. Lifrage obtained a judgment against the plaintiff, J. G. Bryan, in the sum of $3,000 actual damages, and $2,000 punitive damages. The complaint alleged malicious interference with an easement to certain roads connecting plaintiffs' property with the main highway.

The plaintiff, J. G. Bryan (the defendant in the original action), made a motion for a new trial, which was denied. He then appealed to the Supreme Court of South Carolina and the verdict of the jury and judgment entered thereon was affirmed by opinion filed September 16, 1950. Bryan v. Bryan, 217 S.C. 555, 61 S.E.2d 177.

The defendant, J. G. Bryan, then brought an action by complaint dated October 16, 1950, in which he was a plaintiff against the defendants herein and the Sheriff of Williamsburg County. In this action the plaintiff alleged that the verdict in the original suit was obtained by perjured testimony and asked the court to set aside and vacate the judgment entered thereon. The defendants demurred to the complaint on the ground that it did not state sufficient facts to constitute a cause of action. This demurrer was overruled by order of the Circuit Judge dated December 28, 1950. Thereafter, appeal was taken to the Supreme Court of South Carolina, which reversed the order of the Circuit Court, sustained the demurrer and dismissed the complaint. Bryan v. Bryan, 220 S.C. 164, 66 S.E.2d 609.

On October 1, 1951, the plaintiff, J. G. Bryan, petitioned the Supreme Court for leave to move for a new trial upon after-discovered evidence under South Carolina Supreme Court Rule No. 24. The Supreme Court by order dated October 12, 1951, denied this petition.

The defendant in the original action, J. G. Bryan, thereafter brought the second collateral action against the same parties, in which he alleged that the denial of the State Court to grant him relief deprived him of his property without due process of law, in violation of the First Section of the Fourteenth Amendment of the United States Constitution. The defendants again demurred to this complaint and by order of the State Circuit Court dated June 14, 1952, this demurrer was sustained and the complaint was dismissed. From this order of the Circuit Judge, notice of intention to appeal was given. This appeal was dismissed by order of the Circuit Court on August 28, 1952.

The complaint in this present action sets forth, among other things, that the Circuit Court, in affirming the same in the original

appeal, based the decision on testimony which was known by the defendants herein to be false, perjured, fabricated and fraudulent in certain particulars; that said judgment so obtained by fraud and perjury would result in taking the property of plaintiff without due process of law, in violation of Section 1 of the Fourteenth Amendment of the Constitution of the United States.

The defendants have filed a motion to dismiss this action under provision of Rule No. 12 of Federal Rules of Civil Procedure, 28 U.S.C., on several grounds. The matter was heard before me at Chambers in Florence, South Carolina, on September 2, 1952. All records and procedures in the State Courts were submitted to me.

Only three questions are raised which need be considered:

1. Can the Federal Court set aside a judgment obtained in a State Court in a collateral action on the ground that it was obtained by intrinsic frauds?

2. Has the plaintiff been denied due process of law under the First Section of the Fourteenth Amendment of the Constitution of the United States?

3. Does the *res adjudicata* rule apply in this case?

The first question was considered by the Supreme Court of South Carolina in the first collateral case, Bryan v. Bryan, 220 S.C. 164, 66 S.E.2d 609.

In this case, the court fully discussed the right of a court of equity to grant relief from the judgment on the ground that it was obtained by perjured testimony, and clearly decided that the perjured testimony was a species of intrinsic fraud and that no relief could be granted on this ground; that only the existence of extrinsic fraud was a proper ground for relief. The court rests its opinion primarily on the case of United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93. In this case it was held that perjured evidence is a species of intrinsic and not extrinsic fraud and that an action in equity will not lie to set aside a judgment merely because it was obtained by perjured testimony.

The Circuit Court of the Fourth Circuit, in the case of Aetna Casualty & Surety Company v. Abbott, 130 F.2d 40, 43, had practically the same question for consideration as we have in this case. In the Abbott case it appears that judgment was obtained by Abbott against the Takoma Park Bank in the Maryland Courts. The District Court of the United States was asked to set aside, on account of alleged fraud in the procurement thereof, this judgment of the Maryland Court. It was contended that Abbott had obtained judgment for the Bank's loss of 50 Gold Certificates of the United States from his deposit box; that the alleged loss and disappearance thereof was fraudulent, without foundation in fact, and the result of a conspiracy between Abbott and certain witnesses who testified in his behalf to defraud the Bank and its surety. In disposing of this contention, the Circuit Court said:

"* * * It is nothing more than a general charge of fraud and conspiracy between plaintiff and his witnesses, without specification of any circumstances constituting fraud, and without the averment of any fact showing or tending to show that there was extrinsic fraud in the procurement of the judgment which would justify the court in disregarding it. Even if the language be construed as charging that the judgment sued on was procured by means of perjured testimony, this would not be sufficient; for it is well settled that this constitutes no ground upon which the court could disregard the judgment or deny its enforcement in an independent proceeding. The frauds which justify such action in an independent proceeding between the same parties or their privies are those which are extrinsic or collateral to the matter tried, and not frauds, such as perjured evidence, which were 'actually presented and considered in the judgment assailed.'"

In United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93, an excellent definition is given of extrinsic, as distinguished from intrinsic fraud, which may be used as the basis of setting aside a judgment. This statement reads as follows:

"* * * Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing."

This case also gives a sound reason for the rule that intrinsic fraud may not be used as a basis for setting aside a final judgment, which has been duly entered, as follows:

"* * * 'The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be contradicted.' * * * We think these decisions establish the doctrine on which we decide the present case; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.

"That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from justice in individual cases."

I think it is important to add at this point only two additional quotations from cases in State Courts that appear in the note to Publicker Industries v. Shallcross, 3 Cir., 106 F.2d 949, 126 A.L.R. 386, said notes appearing at pages 393 and 394, as follows:

"'Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again, ad infinitum.'" Pico v. Cohn (1891) 91 Cal. 129, 25 P. 970, 27 P. 537, 13 L.R.A. 336, 25 Am.St.Rep. 159.

"'Nothing will hinder the defendants in this action, if the plaintiff shall chance to succeed, from filing their complaint alleging the perjury of the plaintiff and his witnesses as the reason of his success, and from obtaining a retrial of the same issue upon the ground of such perjury. And so, whichever party shall be defeated in the successive experiments, the other will be at liberty to return to the charge ad infinitum, till death, exhaustion, or failure of issue or of legal representatives shall terminate the struggle.'" Ross v. Wood, 1876, N.Y., 8 Hun. 185, affirmed in 1877, 70 N.Y. 8.

The Supreme Court of South Carolina held in Bryan v. Bryan, 220 S.C. 164, 66 S.E.2d 609, that an action in equity does not lie to set aside a judgment upon the grounds that it was obtained by perjured testimony, and unqualifiedly adopted the doctrine of United States v. Throckmorton,

supra, summarizing the principle laid down in that case in the following language:

"* * * Assuming, without deciding, that there may be exceptional cases justifying equitable relief on the ground that a judgment was procured by false testimony, there is certainly no showing in the instant case warranting a departure from the general rule. The pleadings in the action in which the judgment was obtained clearly disclosed the issues upon which proof would be offered. Respondent was not misled as to the nature of the evidence he would be required to meet. There is no showing that he was prevented by appellants from fully presenting his case. The jury had a full opportunity of passing on the credibility of the testimony now claimed to be false. There is no good reason to suppose that a court of equity is any more competent to try the disputed issues of fact than the tribunal in which the case was tried."

The principle which renders it improper for this court to undertake an inquiry into the matter, because the State Courts have fully acted, is well illustrated in American Bakeries Company v. Vining, D.C.Fla., 13 F.Supp. 323, 324, affirmed 5 Cir., 80 F.2d 932. The proceedings prior to the Federal Court case are similar to those that have been had in the Courts of the State of South Carolina in this litigation, which includes motion for new trial, petition for rehearing and appeal to the Supreme Court to secure relief against the alleged fraudulent judgment. The Court's opinion sets forth the reasons why motion to dismiss the Federal case was granted. These reasons are so pertinent to this particular case that I here repeat them:

"(1) Plaintiff had a full hearing on the fraud alleged in the state circuit court and in the Supreme Court of the state of Florida. * * *

"(2) The alleged fraud is intrinsic fraud, and the facts set forth in the bill were presented and argued to and considered by the Supreme Court, so they cannot here be presented as extrinsic. (See opinions attached to the bill.)

"(3) This is not an independent suit based on extrinsic facts, as the facts have been determined against the plaintiff in the state court.

"(4) The petition here amounts simply to an attempt to get this court to review and reverse the Supreme Court of Florida in a matter which it said was within its jurisdiction and upon which it passed.

"(5) That concurrent jurisdiction cannot be invoked here, as the state court of concurrent jurisdiction has exercised its jurisdiction and determined the matter and this court will not now assume to exercise any original jurisdiction.

"(6) This litigation should be terminated upon equitable principles."

It appears, therefore, to be quite clear that the Federal Court has no right under the decisions of the Supreme Court of the United States to set aside a judgment on the ground of perjury in securing the judgment unless a definite showing is made that the State Court acted in an arbitrary manner in refusing to consider the plaintiff's rights. In the instant case, the Supreme Court has considered this matter on two appeals and has carefully gone into all the facts and the law, and has rendered its decision. The fact that the courts of South Carolina may have made a mistake is no ground for granting the relief prayed for here. It must be made to appear that the violation of the plaintiff's rights was committed by the State Judiciary in an arbitrary or capricious exercise of power, or is in clear conflict with those fundamental principles which have been established in the systems of jurisprudence for the protection of private rights. This Court cannot state that the State Court of South Carolina has acted in an arbitrary or capricious manner. All of the facts which would be considered in the instant case have been carefully considered by both the Circuit Court and the Supreme Court of the State.

■ I do not think that the plaintiff in this case has been denied due process of law. The courts of our State have carefully considered all of his complaints and have ruled adversely to him. Under these circumstances, no other conclusion can be reached than that the plaintiff has not been denied due process of law. This principle is clearly stated in the case of McDonald v. Oregon Railroad & Navigation Co., 233 U.S. 665, 34 S.Ct. 772, 773, 58 L.Ed. 1145, as follows:

"All the contentions as to Federal rights rest upon the assumption that the court below denied due process of law when it entered the decree complained of, and this is based upon the conception that the court exceeded its jurisdiction and misconceived or wrongfully interpreted the evidence, and thereby in effect, while recognizing the title of the plaintiffs in error, virtually deprived them of the right conferred by the state law of having a common-law trial for the purpose of determining the questions which would require to be decided in case of the exercise by the Railroad company of the right of eminent domain, including, of course, the fixing of compensation to be paid for the taking and the damages incident thereto. Leaving aside for the moment the question of the jurisdiction of the court in the fundamental sense, that is, *ratione materiae,* it is manifest that the want of foundation for all the propositions insisted upon is quite clear, since, after all, taking the aspect most favorable for the plaintiffs in error, the propositions but assert that the court below, in deciding the case, committed error as to matters involving no Federal question because purely of state cognizance. It is elementary and needs no citation of authority to show that the due process clause of the 14th Amendment does not control methods of state procedure or give jurisdiction to this court to review mere errors of law alleged to have been committed by a state court in the performance of its duties within the scope of its authority concerning matters non-Federal in character."

In the case of Tracy v. Ginzberg, 205 U.S. 170, 27 S.Ct. 461, 463, 51 L.Ed. 755, 760, we find the following:

"Within the meaning of that Amendment, the court, by its judgment, did not deprive the plaintiff of property without due process of law. He sought a decree adjudging that he was entitled to the money received by Ginzberg from O'Hearn. The court, proceeding entirely upon principles of general and local law, and giving all parties interested in the question an opportunity to be heard, decided that plaintiff had no right to that money. The decision of a state court, involving nothing more than the ownership of property, with all parties in interest before it, cannot be regarded by the unsuccessful party as a deprivation of property without due process of law, simply because its effect is to deny his claim to own such property. * * * Under the opposite view every judgment of a state court involving merely the ownership of property could be brought here for review,—a result not to be thought of. The 14th Amendment did not impair the authority of the states, by their judicial tribunals, and according to their settled usages and established modes of procedure, to determine finally, for the parties before [it], controverted questions as to the ownership of property, which did not involve any right secured by the Federal Constitution, or by any valid act of Congress, or by any treaty."

■ We think that the decisions of the State Courts are *res adjudicata* in this case. All of the questions which could be presented to the Federal Court have been passed on by the State Courts. There is no showing that the State Court or any of its officers participated in the alleged frauds. There is no showing that either the Circuit Court or the Supreme Court acted in an arbitrary or capricious manner. This question is considered in the case of Fidelity National Bank & Trust Co. of Kansas City

v. Swope, 1927, 274 U.S. 123, 47 S.Ct. 511, 71 L.Ed. 959. In this case the question of assessments of benefits to lands was involved. The landowner, Swope, entered an appearance in the State Court and alleged that the charter provision of the Kansas City charter authorizing the proceeding was void " 'for the reason that it violates the Constitution of Missouri, and the Contitution of the United States'." (See 274 U.S. note 2, at page 128, 47 S.Ct. at page 513.) After a hearing, the State Court entered judgment declaring the assessments and liens valid. No appeal was taken from the decree of the court.

The landowner, Swope, then brought a suit in the District Court of the United States, Abernathy v. Fidelity Nat. Bank & Trust Co., 274 F. 801, which decided in his favor. This was affirmed by the Circuit Court of Appeals. Fidelity Nat. Bank & Trust Co. of Kansas City v. Swope, 8 Cir., 2 F.2d 676. On appeal to the Supreme Court of the United States, the decree of the court was reversed on the ground that since the State Court had passed upon the question, the doctrine of *res adjudicata* applied. I quote from the decision, 247 U.S. 123, 47 S.Ct. 511, 513, as follows:

> "Appellants at the outset argue that all the objections made to the assessments here were open, and hence decided against appellees in the proceeding in the Jackson county circuit court, and that its judgment is not open to collateral attack in this or in any other suit, since the issues which might have been litigated there are *res adjudicata* here. * * *.
>
> "But, if the determination of the state court was *res adjudicata* according to its laws and procedure, no reason is suggested, nor are we able to perceive any, why it is not to be deemed *res adjudicata* here, if the proceeding in the state court was a 'case' or 'controversy' within the appellate jurisdiction of this court. (Fed.Const. art. 3, § 2), so that constitutional rights asserted, or which might have been asserted in that proceeding, could eventually have been reviewed here.
>
> *    *    *    *    *    *

> "That the judgment is binding on the parties and their privies and hence not open to collateral attack would seem to be the only reasonable construction of the statute, if that question were for us to decide. But the Supreme Court of Missouri, since the pendency of the present suit, has held that the judgment rendered by the Jackson county circuit court in a similar proceeding is not open to collateral attack by the property owners within the benefit district, and that such property owners may not litigate in another suit, questions, including the constitutionality of the Fourteenth Amendment of the assessments levied, which might have been raised in the circuit court proceeding. Schmelzer v. Kansas City, supra [295 Mo. 322, 243 S.W. 946]. This decision, although subsequent to the institution of the present suit, effected no change in the local law, upon which appellees had relied. It must be accepted as establishing the effect as *res adjudicata* of the proceeding had under the Missouri statute. Compare Edward Hines [Yellow Pine] Trustees v. Martin, 268 U.S. 458, 45 S.Ct. 543, 69 L.Ed. 1050."

The same conclusion was reached by the Supreme Court of the United States in the case of American Surety Co. v. Baldwin, 1932, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231.

It seems to be quite clear, therefore, that all the matters which could be brought before this court have been carefully considered by the Circuit Court and the Supreme Court of South Carolina, and that no further action can be taken.

The Court has carefully reviewed the decisions cited by the plaintiff. These decisions, except one, related to criminal cases. In all these cases it appears that there was some active participation by state officials which prevented the defendant or defendants from receiving a fair trial. In these cases, the Court participated, through its officers, in the denial of the rights of the defendant.

The case which is principally relied upon by the plaintiff is Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. This

case has no application to the questions raised here. The case was taken on *certiorari* to the Supreme Courts of the States of Missouri and Michigan.

In the instant case it is quite clear that the Supreme Courts did nothing to prevent the defendants in the original action from receiving a fair trial. The case was heard on its merits and no State officials participated in any improper act. This court will not attempt to pass upon the question of whether or not the State Circuit Court or the Supreme Court made an error in its decision which permitted judgment to be obtained against the plaintiff in this case, for this is not a valid ground for relief. There is no showing that the State Judiciary acted in an arbitrary or capricious manner in conflict with the fundamental principles which have been established for the protection of private rights.

There must be an end to all litigation. If cases could be retried in the Federal Court, after trial in the State Courts on the ground of perjured testimony, there would never be an end to any case. Practically every case, particularly where damages are sought against the defendant, would be subject to retrial in the Federal Courts. There are very few cases in which one side or the other would not be able to present a showing that some of the testimony was perjured. This would mean that practically every judgment which is secured in a case like this would have to be retried in the Federal Court because, if the plaintiff in this case has stated a cause of action, it would not be difficult for litigants in like cases to present a complaint which would necessitate the trial of the case in the Federal Court after it has been tried in the State Court.

In view of the conclusions which have been reached, it is not necessary to discuss whether or not the injunction was improperly and improvidently issued.

It is the opinion of the Court that the complaint and injunction should be dismissed,

And it is so ordered.