**RESOLUTE INSURANCE COMPANY, Plaintiff,**

**v.**

**STATE OF NORTH CAROLINA, Edwin Lanier, Commissioner of Insurance of North Carolina, Union County, and Union County Board of Education, Defendants.**

**Civ. A. No. 2064.**

United States District Court
E. D. North Carolina,
Raleigh Division.

Heard Nov. 9, 1967.

Decided Dec. 7, 1967.

George W. Miller, Jr., of Haywood, Denny & Miller, Durham, N. C., for plaintiff.

Ralph Moody, Asst. Atty. Gen., Justice Dept., Raleigh, N. C., for defendants.

HEMPHILL, District Judge.

Facts giving rise to the forfeiture of the bonds in question arose after the defendants Mallory, Crowder and Reep had been indicted, tried and convicted by the Superior Court of Union County. The plaintiff herein then became surety of the appearance bonds on the appeal to the North Carolina Supreme Court. The appeal alleged systematic exclusion of Negroes from the Grand Jury. The Supreme Court reversed the convictions and quashed the indictments on the grounds of systematic exclusion. State v. Mallory, 268 N.C. 536, 139 S.E.2d 870 (1965).

The North Carolina Supreme Court closed its opinion with the following:

The indictments are quashed and the verdicts and judgments are vacated for want of valid indictments to support them. It does not follow that defendants are entitled to discharge and dismissal of the charges. If the State so elects it may send new bills and if they are returned true bills by an unexceptional grand jury, defendants may be tried thereon for the offenses alleged. State v. Mallory, supra.

The face of the appeal bond stated that the plaintiff became surety on the appearance bond of defendants conditioned on their appearance at the May 4, 1964 Term of the Union County Superior Court and at each succeeding term of court pending final disposition of the case.

The decision of the North Carolina Supreme Court quashing the indictments was issued on January 29, 1965. At the May 3, 1965 Session of the Union County Superior Court it was determined that the jury was properly drawn and constituted. The grand jury found on May 4, 1965 true bills against all defendants. All three defendants were called out in open court and failed to answer. A judgment *nisi* was entered. On May 7, 1965 a *sci fa* was served upon the plaintiff, Resolute Insurance Company, by serving its agent, Richard F. Taylor. Writs of *sci fa* were sent out for the individual defendants and were served on the surety.

The *sci fa* ordered the defendants to show cause on August 30, 1965, why judgment absolute should not be had on the bonds. The plaintiff, Resolute, through counsel, appeared and filed answer to the *sci fa*. After a hearing in open court, the courts entered judgment absolute on the bonds. The defendants Crowder, Mallory and Reep were not served as they could not be found. From this judgment the plaintiff herein appealed to the Supreme Court of North Carolina. The basic contention of the plaintiff before the Honorable John McConnell, Superior Court Judge, the Supreme Court of North Carolina and the United States Supreme Court is that no

one was put on notice that the case would be called for trial at the May 1965 Session of Court. The Supreme Court of North Carolina in an opinion handed down on December 15, 1965 held that the plaintiff was liable on the appearance bonds which are the subject of this action. State v. Mallory, 266 N.C. 31, 145 S.E.2d 335 (1965). Thereafter the plaintiff filed an Application for Certiorari in the Supreme Court of the United States in which it attempted to have the opinion of the Supreme Court of North Carolina reviewed. The Petition for Certiorari was dismissed by the Supreme Court of the United States on May 2, 1966. No. 1172 Mallory, et al., Petitioner v. North Carolina, 384 U.S. 928, 86 S.Ct. 1443, 16 L.Ed.2d 531.

The plaintiff then instituted this action in the federal court in Raleigh seeking an injunction against the State of North Carolina, Edward Lanier, Commissioner of Insurance of North Carolina, Union County and Union County Board of Education.

The plaintiff's main contention is that since it was given no notice at the May 4, 1965 session of the Union County Superior Court it will be subsequently denied due process of the law if the State of North Carolina is allowed to sell the securities held by the Insurance Commissioner of North Carolina. In effect the plaintiff alleges that the decision of the North Carolina Supreme Court holding that the plaintiff was liable on the appearance bonds is erroneous.

It is undisputed that defendants, or some of them, plan such a sale pursuant to North Carolina General Statute 58–184.[1] Specifically involved are bonds[2]

---

1. N.C.G.S. § 58–184 provides: Sale of deposits for payment of liabilities. If the company fails to pay any of its liabilities on its contracts according to the terms thereof, after the liabilities have been adjusted between the parties in the manner prescribed by the contracts, if any manner is prescribed thereby, or after the same have been ascertained in any manner agreed upon by the parties or by the judgment, order, or decree of the court having jurisdiction of the subject, the Commissioner of Insurance shall, upon application of the party to whom the debt or money is due, and upon satisfactory proof that the notice herein required has been given to the company, proceed to sell at public auction such an amount of the securities as, with the interest in his hands, will pay the sum due and expenses of sale, and out of the proceeds of sale pay said sums and expens-

deposited, in order to do business in North Carolina, by plaintiff, with the North Carolina Commissioner of Insurance. This is required by North Carolina statute.[3]

Hearing was held before this court, sitting by designation, at Raleigh, North Carolina, November 9, 1967. On November 10, 1967 counsel entered into a stipulation, approved by the court, that proceeding to sell the securities under G.S. §

58–184 would be held in abeyance for 30 days, at the end of which time the status of the parties would not be prejudiced by the stipulation.[4]

Plaintiff initially claimed jurisdiction under 28 U.S.C. § 1331(a).[5] At the hearing in this court plaintiff asked, and received, permission to amend his Complaint so as to allege jurisdiction under 28 U.S.C. § 1332.[6]

es; and the company shall be required forthwith to make good any deficit in the amount of the deposit caused by such sale. The party making application shall give to the company or to its agent in this State twenty days' notice of his intention to apply to the Commissioner of Insurance for the sale of securities. The Commissioner of Insurance shall advertise the sale of the securities for thirty days prior to the day of the sale in some daily newspaper published in the city of Raleigh, and shall state in the advertisement the securities to be sold and the company depositing them, and shall mail a copy to the company.

2. Verified list furnished in support of plaintiff's motion for a temporary injunction.

3. N.C.G.S. § 58–182.1. Amount of deposits required of foreign or alien fidelity, surety and casualty insurance companies.—*Unless otherwise provided in this article every fidelity, surety or casualty insurance company chartered by any other state or foreign government shall make and maintain deposits of securities with the Commissioner in the following amounts:*

(1) Companies whose premium income derived from this State is less than one hundred thousand dollars ($100,000.00), twenty-five thousand dollars ($25,000.-00);

(2) Companies whose premium income is in excess of one hundred thousand dollars ($100,000.00), fifty thousand dollars ($50,000.00).

for which deposit the Commissioner shall give a receipt.

4. A further stipulation, dated November 15, 1967 and filed November 22, 1967, apparently extended time to plead, but did not refer to the abatement.

5. 28 U.S.C. § 1331(a) provides: The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest

and costs, and arises under the Constitution, laws, or treaties of the United States.

6. 28 U.S.C. § 1332 provides: (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State, and foreign states or citizens or subjects thereof; and

(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: PROVIDED FURTHER, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

(d) The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

At the hearing the defendants moved to dismiss the plaintiff's motion for injunctive relief on the following grounds:

(a) The Complaint fails to state a claim upon which relief can be granted by the court.

(b) Under the allegations of the Complaint plaintiff has no possible right to relief under any state or set of facts which could be proved in support of its claim or allegations.

(c) Under the allegations of the Complaint plaintiff has no possible right to relief on any theory, under any discernible circumstances, and there is an utter lack of law and alleged facts.

The basic thrust of the defendants' contention is that there is no jurisdiction in the Federal District Court.

The court is without jurisdiction to entertain this suit for a multiple of reasons. The court is under a positive duty to decline jurisdiction.

■ An integral claim of plaintiff's cause of action is based on an assertion that the decision of the court of highest jurisdiction of the State of North Carolina was erroneous. Title 28 U.S.C.A. § 1331 does not afford a basis for jurisdiction in the federal court upon the allegation that a judgment of the State Court was erroneous, arbitrary and capricious and that the plaintiff was thus denied due process of law.

In Williams v. Tooke, et al., 108 F.2d 758 (5th Cir. 1940), cert. den. 311 U.S. 655, 61 S.Ct. 8, 85 L.Ed. 419, the allegation of plaintiff's Complaint was to the effect that the Texas State Court had decided arbitrarily, capriciously and erroneously against the plaintiff. In dismissing the suit for want of jurisdiction, the Circuit Court said:

The purpose of the suit is clearly to seek a review of the decisions of the Texas courts and the reversal of those decisions for error. The jurisdiction of the District Court is strictly original. It has no jurisdiction to reverse or modify the judgment of a state court. The errors complained of could be reviewed only by the Supreme Court. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362. It was the duty of the District Court to dismiss the suit.

In Carolina-Virginia Racing Ass'n v. Cahoon, 214 F.2d 830 (4th Cir. 1954), plaintiff attempted a federal court attack on the decision of the North Carolina Supreme Court. In dismissing the case the Court said:

It is true that the courts of a state have the supreme power to interpret and declare the written and unwritten laws of the state; that this court's power to review decisions of state courts is limited to their decisions on federal questions; and that the mere fact that a state court has rendered an erroneous decision on a question of state law, or has overruled principles or doctrines established by previous decisions on which a party relied, does not give rise to a claim under the Fourteenth Amendment or otherwise confer appellate jurisdiction on this court.

The plaintiff's case presents an issue of State law already decided by the State Supreme Court. See Rooker v. Fidelity Trust Co., supra; Stafford v. Superior Court of Cal., etc., 272 F.2d 407 (9th Cir. 1959), cert. den. 362 U.S. 979, 80 S.Ct. 1064, 4 L.Ed.2d 1013; Drawdy Investment Company v. Leonard, 261 F.2d 226 (5th Cir. 1958).

■ The judgment of the North Carolina Supreme Court is *res judicata*, especially in view of the fact that certiorari to the Supreme Court of the United States was denied.[7]

7. The United States Supreme Court, in its memorandum decision in #1122, Mallory et al. v. North Carolina, 384 U.S. 928, 86 S.Ct. 1443, 16 L.Ed.2d 531, gave no reason for its denial of certiorari. A review of the Petition in that case shows that substantially, the issues sought to be projected in that court are the issues upon which reliance is had by plaintiff in the courts of the Eastern District of North Carolina. A review of Mallory, 266 N.C. 31, 145 S.E.2d 335 shows that, substantially, the same issues were passed upon by the North Carolina Supreme

■ Plaintiff's complaint involves the same parties and the identical issues as were decided by the North Carolina courts. The assertion in the State Court was that no notice had been served or given to plaintiff.

By merely failing to raise the constitutional issue in the state action, appellants could not preserve for themselves the right to enter a federal court at a later date upon the same facts, alleging the same wrong, and seeking the same recovery, simply because they present a new theory based upon the Constitution. Tomiyasu v. Golden, 358 F.2d 651 (9th Cir. 1966).

■ "A state court judgment is binding and conclusive on the parties and their privies in any subsequent action between them in federal court as to all matters actually in issue and decided in the state court action, and, under some circumstances, as to all matters that might have been litigated." 50 C.J.S. Judgments § 900 (1947).

■ While State and Federal Courts are a part of the dual system of courts, they are also a part of the federal scheme of government. Thus, the litigation of an action in one of the systems of courts, if the judgment be final, is binding upon the other. Each of the systems of courts contemplates the existence of the other and each recognizes the jurisdiction of the other. If this were not so, identical questions could be re-litigated forever in the dual system on claims of jurisdiction ranging from diversity to violation of Constitutional rights.

Nothing more clearly demonstrates the necessity of preserving the integrity of judgments of State and Federal Courts than a suit brought in a State court, litigated there through final judgment and then brought anew in the Federal Court on a claim of diversity of citizenship. If this were allowed, the litigation of matters in the courts would be chaotic to say the least. Plaintiffs who have lost their suits initially in a State or Federal Court could start anew with the full knowledge of what the defense was relying on. The first court would become a sounding board for the subsequent proceeding.

The cases are legion in support of the common-sense proposition that adjudication by a court of competent jurisdiction is *res judicata* to all courts. This applies alike to State-Federal Courts within the framework of a federal system. The doctrine applies with full force here.

■ Finally, on the question of *res judicata*, when the United States Supreme Court dismissed the petition it closed the only avenue of relief available to plaintiff (and others standing in the same shoes). Warriner v. Fink, 307 F.2d 933 (5th Cir. 1962) cert. den. 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969; Norwood v. Parenteau, 228 F.2d 148 (8th Cir. 1955), cert. den. 351 U.S. 955, 76 S.Ct. 852, 100 L.Ed. 1478; Manufacturers Record Publ. Co. v. Lauer, 268 F.2d 187 (5th Cir. 1959) cert. den. 361 U.S. 913, 80 S.Ct. 258, 4 L.Ed.2d 184.

■ This court cannot overlook the specific direction of Congress limiting its injunctive powers.[8] Indeed, it has been correctly called the "anti-injunction statute" of federal authority. Plaintiff fails to come within the confines of the limita-

Court. Since the United States Supreme Court does not *state*, categorically, that no substantial federal question exists, the district court is not at liberty to *assume* the effect of refusal of certiorari was tantamount an adjudication on the merits, but see Beck v. McLeod, 240 F.Supp. 708 (D.S.C.1965) cert. den. 382 U.S. 454, 86 S.Ct. 645, 15 L.Ed.2d 522 and Wright on Federal Courts (1963 Ed.) p. 431. See also Stern v. Gressman Supreme Court Practice (3rd Ed. 1962), p. 164, citing Barton v. Sentner, 353 U.S. 963,

77 S.Ct. 1047, 1 L.Ed.2d 901, where it is noted that "[t]he court is, however, deciding a case on the merits, when it dismisses for want of a *substantial* question, or affirms summarily."

8. 28 U.S.C.A. § 2283 provides: A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

tion. This court will not sit in review of the judgment of the North Carolina courts of admittedly competent jurisdiction. It adopts the reasoning of Horton v. Stegmyer, 175 F. 756, 758 (8th Cir. 1910) in turn adopted by the Fifth Circuit in Manufacturers Record Publ. Co. v. Lauer: [9]

A federal court sitting in equity has jurisdiction to disregard or to enjoin the enforcement of an unconscionable judgment of a state or of a national court for new causes, such as fraud, accident, or mistake, which deceive the court into a wrong decree, or which prevent the judgment defendant from availing himself of a meritorious defense that was not fairly presented to the court which rendered the judgment. But it has no power *to take such action on account of errors or irregularities in the proceedings on which the judgment or decree is founded, or on account of erroneous or illegal decisions by the court which rendered the judgment or decree.* The reason of this rule is that cases of the former class present new controversies, which have never been raised in other courts, while *cases of the latter class invoke a jurisdiction which does not exist, a jurisdiction in a federal court to review and revise the acts and decisions of courts of co-ordinate jurisdiction upon questions which they have lawfully considered and adjudged.* National Surety Co. v. State Bank of Humboldt, 8 Cir., 120 F. 593, 598, 600, 56 C.C.A. 657, 662, 664, 61 L.R.A. 394, and cases there cited. *The decree of the state court is therefore valid, and it must be enforced and respected, unless the complainant has pleaded facts evidencing such a fraud as will warrant a disregard of it.* (Emphasis supplied.)

There is neither pleading, nor evidence, of fraud before this court.

 As to the application of the anti-injunction statute to the attempt by North Carolina, or one of its government subdivisions, to proceed under Section 58–184 of its General Statutes, the inclusion intended by Congress is clear:

Fourth. The prohibition of section 265 [28 U.S.C. § 2283] is against a stay of "proceedings in any court of a State." That term is comprehensive. It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process. It applies to appellate as well as to original proceedings; and is independent of the doctrine of res judicata. It applies alike to action by the court and by its ministerial officers; applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective. The prohibition is applicable whether such supplementary or ancillary proceeding is taken in the court which rendered the judgment or in some other. And it governs a privy to the state court proceeding—like Elinor Dorrance Hill—as well as the parties of record. Thus, the prohibition applies whatever the nature of the proceeding, unless the case presents facts which bring it within one of the recognized exceptions to section 265. It is not suggested that there is a basis here for any such exception.[10]

The North Carolina statute does not fall within the ambit of any of the exclusions of 28 U.S.C. § 2283.

 Plaintiff may not, in this action, collaterally attack the judgment of the State Court. As an adjunct to the doctrine of *res judicata* the doctrine of collateral attack prevents the plaintiff from asserting the invalidity of a judgment regularly had in the State Court. This doctrine may be called a corollary to *res judicata* and is so well established that an exhaustive citation of authority is not required. Notable among these decisions are: Prichard v. Nelson, 55 F. Supp. 506 (W.D.Va.1942) affirmed 137

---

9. 268 F.2d 187, 191 (5th Cir. 1959).

10. Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 282, 80 L.Ed. 293.

F.2d 312 (4th Cir. 1943); Turner v. Alton Banking & Trust Co., 181 F.2d 899 (8th Cir. 1950) cert. den. 340 U.S. 833, 71 S.Ct. 66, 95 L.Ed. 611; Manning v. State Farm Mutual Auto Ins. Co., 235 F. Supp. 615 (W.D.N.C.1964); Bryan v. Bryan, 109 F.Supp. 366 (E.D.S.C.1952); Midessa Television Co. v. Motion Pictures for Television, Inc., 290 F.2d 203 (5th Cir. 1961) cert. den. 368 U.S. 827, 82 S. Ct. 47, 7 L.Ed.2d 30.

In the *Bryan* case, supra, Judge Williams of the District Court of South Carolina in an opinion dismissing the Complaint and injunction said (109 F.Supp. p. 371).

> I do not think the plaintiff in this case has been denied due process of law. The courts of our State have carefully considered all his complaints and have ruled adversely to him. Under these circumstances, no other conclusion can be reached than that the plaintiff has not been denied due process of law. This principle is clearly stated in the case of McDonald v. Oregon Railroad & Navigation Co., 233 U.S. 665, 34 S. Ct. 772, 58 L.Ed. 1145 * * *.

In *Midessa,* supra, the Court stated the doctrine of collateral attack as follows (290 F.2d p. 204):

> Plaintiff relied below and relies here on the established rule that in a suit on a judgment of a state court, predicated on proper jurisdiction over the subject matter and person, as was the case here * * * the judgment is not subject to collateral attack. Ripley Fabrics Corp. v. Hymen, D.C., 91 F.Supp. 1007; Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278; Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488.

Plaintiff does not take the position that the judgment against it was procured by fraud, mistake, et cetera. Rather, plaintiff says he was denied due process of law and that the State Court had no jurisdiction. Of course, the plaintiff's own Complaint pleads service of *sci fas* upon the agent in fact of the Resolute

Insurance Company. Additionally, the papers attendant to the state action will show that plaintiff was aptly notified of the proceeding and through counsel appeared in court, filed an answer to the *sci fas* and appealed from an adverse judgment to the Supreme Court of North Carolina. This invokes the doctrines of *res judicata* and its corollary principle, collateral estoppel. Plaintiff is estopped to proceed.

The cases cited by plaintiff are not apposite. In reading over the cases cited in the plaintiff's brief in support of jurisdiction, it appears that none of these cases are pertinent to the question of jurisdiction here opposed. Most of the plaintiff's cases deal with the right of federal courts to restrain some action by state government or with the right of a federal court to restrain a judgment in the State Court had under fraudulent or mistaken conditions.

Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110, deals with a suit initiated by Negroes in the federal court to enjoin the legislature of the State of Alabama from changing the boundary lines of the City of Tuskegee, on the allegation that it would eliminate from the City several Negro voters. The Supreme Court in this particular case held that the federal court had jurisdiction. The opinion does not specify what particular section of the United States Code was relied upon for jurisdiction, but it is doubtful that either Section 1331 or 1332 was involved. This case originating as it did in the federal court offers little or no comfort to the plaintiff's position.

Gray v. Saunders, 372 U.S. 368, 83 S. Ct. 801, 9 L.Ed.2d 821, likewise is a case initiated in the federal court on its original jurisdiction. The suit was brought to sustain the State statute of Georgia pertaining to the use of the county unit system in Democratic primaries. The case was heard before a three-judge federal court. It is in no wise a precedent for the plaintiff's attempt to relitigate a

valid judgment of the courts of the State of North Carolina.

Other situations are set forth in the plaintiff's brief pertaining to the restraining of judgments obtained in State courts on the ground that such judgments were obtained by fraud and without notice. Plaintiff in his pleading alleges no fraud. He does contend that plaintiff had no notice, but his pleadings give him away on this point. Plaintiff's own pleadings show that the plaintiff's attorney in fact was served with *sci fas* in this matter. Further, the plaintiff appeared in the Superior Court of Union County when the case was heard on its merits, filed an answer to the merits and from an adverse judgment appealed to the Supreme Court of North Carolina. If there was any defect in the service of process upon the plaintiff, which is denied, it was most surely cured by the general appearance of the plaintiff and the answer to the merits of the case, followed by subsequent appeal.

Of course, if the judgment in this case which the plaintiff attacks was obtained without notice to the plaintiff, his remedy is by directly attacking the same in a State procedure under the substantive law of the State of North Carolina. This method was open to him and was utilized by him including his appeal to the United States Supreme Court. However, he may not now relitigate the identical question in the federal court or collaterally attack a valid judgment rendered in the State Court.

It is the policy of federal courts to abstain from jurisdiction in matters clearly within the province of state courts. Thus, it is the duty of the federal court to examine the pleadings to see if a substantial federal question is present. American Travelers Club, Inc. v. Hostetter, D.C., 219 F.Supp. 95. The court will look beyond the verbiage of the Complaint in determining this. Trauss v. City of Phila., D.C., 159 F.Supp. 672; Poss v. Lieberman, 299 F.2d 358 (2nd Cir. 1961). The history of plaintiff's efforts to avoid its surety responsibility as revealed in the record now before this court, the pleadings reviewed, unfold no substantial federal question. Indeed, the surety bond, on its face is a North Carolina contract, contemplated for use, construction, and performance on a state level. No events subsequent change project its consideration into the federal periphery. Under the philosophy of abstention this court denies relief to plaintiff.

Doubts as to federal jurisdiction must be resolved against it. Structural Steel & Forge Co., v. Union Pacific R.R., 10 Cir., 269 F.2d 714 cert. den., 361 U.S. 886, 80 S.Ct. 157, 4 L.Ed.2d 121.

In the case at hand plaintiff has had his day in court and is seeking to resort to the federal court to relitigate his case. No federal question is involved. His claim is identical to that litigated before. There is no jurisdiction in the United States District Court under any theory presented by the plaintiff.

This court is always open to those who seek relief in its forum. Once the pleading is filed, the consideration of the court is assured. But there the ease of invoking federal consideration ceases. United States Courts are of limited jurisdiction. Such was and is the intent of Congress. The burden is on those seeking federal jurisdiction to prove its application. This the plaintiff has utterly failed to do.

This United States District Court lacks jurisdiction to further consider this matter.

The action is dismissed.

And it is so ordered.