STATE OF NORTH CAROLINA v. MAE MALLORY, HAROLD REEP, RICHARD CROWDER, JOHN C. LOWRY, AND RESOLUTE INSURANCE COMPANY AND TIDEWATER BONDING AND SURETY AGENCY, INC., SURETIES FOR MAE MALLORY, HAROLD REEP AND RICHARD CROWDER.

(Filed 15 December, 1965.)

**1. Appeal and Error § 19—**

Where there is no exception by an appellant to the denial of his motion to strike a judgment of forfeiture entered against him, his assignment of error in regard to the matter is ineffectual, since an assignment of error must be supported by an exception duly entered.

**2. Appeal and Error § 21—**

An exception to the judgment presents the face of the record proper for review for the purpose of determining whether error of law appears on the face of the record and whether the judgment is regular in form.

**3. Arrest and Bail § 10—**

A bail or appearance bond ordinarily binds the principal to appear and answer to a specific charge, to stand and abide the judgment of the court, and not to depart without leave of the court, and each of these obligations are separate and distinct.

**4. Same—**

An appearance bond conditioned upon defendant appearing at a specified term of Superior Court and each succeeding term "pending the final disposition" of the cause, and not to depart without leave of the court, and a cash bond upon like conditions, are not discharged by decision on appeal quashing the indictments, stipulating that defendants are not entitled to their discharge, and stating that the State might proceed upon new indictments.

**5. Same—**

Service of notice of judgment *nisi* upon the attorney in fact of the surety is service upon the surety.

**6. Same—**

Upon breach of condition of a cash appearance bond neither issuance of a *scire facias* nor other notice is necessary, and judgment absolute may be entered after 30 days or at the next term of court, whichever is later. G.S. 15-113.

**7. Same—**

Defendants breach their appearance bonds when they are called and fail to answer upon the return of new indictments after quashal of the original indictments, and judgment *nisi* is thereupon properly entered, and after service of notice upon the surety, judgment of forfeiture is properly entered at the term designated in the notice, but the judgment of forfeiture should further provide that the State should have and recover from the principals and the sureties the amount stipulated in the respective bonds.

APPEAL by defendants from *McConnell, J.,* 30 August 1965 Session of UNION.

Proceeding by the State of North Carolina to enforce forfeited appearance bonds and a forfeited cash deposit for appearance posted in lieu of bond.

At the February 1964 Mixed Session of Union County Superior Court the individual defendants were tried on two separate indictments, consolidated for trial. One indictment charged them jointly on 17 August 1961 with unlawfully, wilfully, feloniously and forcibly kidnapping one Mabel Stegall, a violation of G.S. 14-39. The other indictment is identical except that it charges the kidnapping of G. Bruce Stegall.

Plea: Not guilty. Verdict: Guilty as charged. Judgment of imprisonment was entered as to each defendant, and each defendant appealed to the Supreme Court.

Defendant Mallory gave an appearance bond when she appealed to the Supreme Court as follows:

"NORTH CAROLINA          IN THE SUPERIOR COURT
UNION COUNTY          CASES NOS. 1088 & 1089

STATE OF NORTH CAROLINA ) APPEARANCE BOND IN
          v.          } CASES ON APPEAL TO
May (Mae) Malory          ) SUPREME COURT

KNOW ALL MEN BY THESE PRESENTS:

"That May (Mae) Malory, as principal, and Resolute Insurance Co., as surety, are held and firmly bound unto the State of North Carolina in the sum of Fifteen Thousand ($15,-000) Dollars, for which payment well and truly to be made, the parties hereto bind themselves, their heirs, executors, administrators, and assigns, jointly and severally firmly by these presents.

"Signed, sealed and dated this the 16 day of March, 1964.

"The condition of this bond is such that, whereas the above bounden, May (Mae) Malory having been convicted in the Superior Court of Union County, North Carolina, in the above numbered cases and having appealed from the judgments and sentences of the Court to the Supreme Court of North Carolina, and the Court having fixed her appearance bond in these cases Nos. 1088 Kidnapping G. Bruce Stegall; Nos. 1089 Kidnapping Mabel Stegall in the amount of Fifteen Thousand ($15,-000) Dollars:

"Now, therefore, if the above bounden defendant, May (Mae) Malory shall make her appearance AT THE MAY 4th, 1964 TERM OF UNION COUNTY SUPERIOR COURT AND AT EACH SUCCEEDING TERM OF SAID COURT PENDING THE FINAL DISPOSITION OF THE ABOVE CASES, AND SHALL NOT DEPART THE SAME WITHOUT LEAVE OF THE COURT, THEN THIS OBLIGATION SHALL BE VOID; OTHERWISE TO REMAIN IN FULL FORCE AND EFFECT.

> s/ May Malory          SEAL
>     May (Mae) Malory
>     RESOLUTE INSURANCE CO.
>     By   Richard F. Taylor    SEAL
>     Attorney in Fact

"Witness:
Carroll R. Lowder
Clerk of Superior Court
"State of NORTH CAROLINA
UNION COUNTY

"The execution of the foregoing instrument was acknowledged before me by RESOLUTE INSURANCE CO. By Richard F. Taylor, Attorney in Fact, for the purposes therein expressed.
"Witness my hand and seal, this the 16 day of March, 1964.

> Carroll R. Lowder
> Clerk Superior Court Union County"

Defendant Reep, when he appealed to the Supreme Court, gave an appearance bond identical with that of defendant Mallory, and with the same surety, except that his bond is in the amount of $7,500.

Defendant Crowder, when he appealed to the Supreme Court, gave an appearance bond identical with that of defendant Mallory, and with the same surety, except that his bond is in the amount of $10,000.

Defendant Lowry's wife posted with the Superior Court of Union County $5,000 in cash as security for his appearance, when he appealed to the Supreme Court. In the record Lowry's name is

spelled Lowry and also Lowery. The appearance bond signed by Lowry and his wife is as follows:

"STATE OF NORTH CAROLINA } February 28 Term, 1964
UNION COUNTY } Superior Court

      STATE

        v.            RECOGNIZANCE

John Cyrl Lowry

"In this case the defendant John Cyril Lowry, and Mrs. Marcia Lowry his sureties, come into court and acknowledge themselves indebted to the State of North Carolina in the sum of Five ($5,000.00) Thousand Dollars.

"The conditions of the above obligation are such that if the above-bounden defendant John Cyrl Lowry shall make his personal appearance at the next term of this court, to be held on May 4, 1964 and at each succeeding term of said Court pending the final disposition of the above cases, 19......, and not depart the same without leave, then this obligation to be null and void, otherwise to remain in full force and effect.

"Witness our hands and seals, this 28 day of February, 1964.

"Sworn and subscribed before me this 28 day of February, 1964.

                /s/ JOHN C. LOWRY     SEAL
                /s/ MRS. MARCIA LOWRY     SEAL

/s/ CARROLL R. LOWDER, C.S.C.

(on reverse side)
"NORTH CAROLINA, UNION COUNTY.

"Mrs. Marcia Lowry, one of the subscribers to the above undertaking, being duly sworn, says that he [*sic*] is a resident and freeholder in the State of North Carolina, and is worth the sum of $5,000.00 over and above all his [*sic*] debts and liabilities and exclusive of property exempt from execution.

"Sworn and subscribed before me, this 28th day of February, 1964.

                /s/ MRS. MARCIA LOWRY

/s/ CARROLL R. LOWDER, C.S.C."

The decision on the appeal in this case was filed by this Court on 29 January 1965, and is in 263 N.C. 536, 139 S.E. 2d 870. We

STATE *v.* MALLORY.

quashed the two indictments for racial discrimination in the selection of the grand jury that returned the indictments. The Court closed its opinion with this language:

"The indictments are quashed and the verdict and judgments are vacated for want of valid indictments to support them. It does not follow that defendants are entitled to discharge and dismissal of the charges. If the State so elects it may send new bills and if they are returned true bills by an unexceptionable grand jury, defendants may be tried thereon for the offenses alleged."

The opinion of this Court was certified down to the Superior Court of Union County on 8 February 1965.

At the 15 February 1965 Session of Union County Superior Court, Burgwyn, E.J., entered an order commanding the county commissioners of Union County to prepare a new jury list without regard to race, creed or national origin, and place it in the jury box.

At the 3 May 1965 Session of Union County Superior Court, Shaw, J., had a hearing and found as a fact that the county commissioners had complied with Judge Burgwyn's order, and that the jury drawn for that session of court was properly drawn and constituted. Whereupon, from the jury drawn for that session a grand jury was duly chosen, sworn, impaneled and charged. On 4 May 1965 this grand jury found two separate indictments against all the individual defendants here and one Robert F. Williams. One indictment charged them jointly with feloniously and forcibly kidnapping Mabel Stegall, and the other indictment is identical except that it charges the kidnapping of G. Bruce Stegall. On the day these two indictments were returned by the grand jury, Mallory, Reep and Crowder were each called out in open court, and each failed to answer. Whereupon, the court entered a judgment *nisi* against each one of these three defendants and the surety on the appearance bond of each one of these defendants, and further ordered that a *scire facias* be issued by the clerk. On the same day Lowry was called out in open court, and failed to answer. Whereupon, the court entered a judgment *nisi* on his cash bond.

Notice of judgment *nisi* was issued on 10 May 1965, and served on 28 May 1965 on Richard F. Taylor, Attorney in Fact for the Resolute Insurance Company, the surety on the appearance bond of Mallory; Mallory could not be found so notice of the judgment *nisi* was not served on her. This notice commands Mallory and the Resolute Insurance Company, the surety on her appearance bond, to be and appear before the presiding judge of the Superior Court

for Union County at the courthouse in Monroe, North Carolina, on 30 August 1965, and then and there to show cause, if any they have, why the said judgment *nisi* shall not be made absolute against them, according to their aforesaid appearance bond. Similar notices of judgment *nisi* were issued on the same day and served on the same day on the same Attorney in Fact for the Resolute Insurance Company, surety on the appearance bonds of Reep and Crowder; Reep and Crowder could not be found, so notice of the judgment *nisi* was not served on them.

An answer to the notices of judgment *nisi* served upon the Resolute Insurance Company was filed by it and by its agent, Tidewater Bonding and Surety Agency, Inc., on 30 August 1965. In their answer they admit that they became sureties on the appearance bond of Mallory in the amount of $15,000, on the appearance bond of Reep in the amount of $7,500, and on the appearance bond of Crowder in the amount of $10,000. They allege in substance as follows: During the Spring Term 1965, the Supreme Court rendered its decision in which the convictions of these three persons were reversed and the indictments quashed. From the time of the Supreme Court decision until 4 May 1965, Mallory, Reep, and Crowder were not charged with any criminal offense in the State of North Carolina. That neither the individual defendants nor they were put on notice that the cases would be called for trial at the May 1965 Session of court. That by reason of the aforesaid matters the appearance bonds of Mallory, Reep, and Crowder were absolutely discharged, and were no longer liable for their appearance in Union County Superior Court. Wherefore, they pray that the court issue a judgment discharging them from liability on these appearance bonds, and returning the appearance bonds to them.

The individual defendants here made a motion in writing before Judge McConnell in which they state that their appearance bonds, which the court at the May Session 1965 "had presumed to forfeit," had already expired by virtue of the opinion of the Supreme Court quashing the indictments against them. That the cases against these defendants were prematurely called for trial at the May Session 1965, in that their cases should only have been called for the purpose of determining whether or not the mandate of the State Supreme Court had been complied with and for the purpose of setting new appearance bonds and trial dates. The failure of the solicitor to notify these defendants of his election to proceed with new indictments, and the fact that the solicitor had never sought to admit defendants to new appearance bonds, constitute a denial of their rights under Article I, Section 17, of the North Carolina Con-

stitution, and of the due process clause of the Fourteenth Amendment to the United States Constitution. Wherefore, these defendants, in order to safeguard their constitutional rights, through their attorneys moved the court for a dismissal of the bond forfeitures entered against them, and for a striking of the judgments *nisi* which were entered against them at the May 1965 Session. The court denied this motion by the individual defendants. To the denial of this motion the individual defendants did not except.

Judge McConnell, after reciting in his judgment that none of the individual defendants were in court and that they and the sureties on their bonds have failed to show proper and sufficient cause why their appearance bonds should not be forfeited and judgment absolute entered thereon, and that Lowry had posted a cash bond in the amount of $5,000, entered a judgment forfeiting the appearance bond of Mallory in the amount of $15,000, the appearance bond of Reep in the amount of $7,500, the appearance bond of Crowder in the amount of $10,000, and the cash bond of Lowry in the sum of $5,000.

From this judgment the individual defendants and the corporate defendants appeal to the Supreme Court.

*Attorney. General T. W. Bruton and Deputy Attorney General Ralph Moody for the State, and Smith & Griffin by C. Frank Griffin for the Board of Education of Union County.*

*Mitchell & Murphy and W. B. Nivens for defendant appellants Mallory, Reep, Crowder and Lowry.*

*Seawell & Harrell by Bernard A. Harrell for defendant appellants Resolute Insurance Company and Tidewater Bonding & Surety Agency, Inc.*

PARKER, J. The individual defendants and the corporate defendants have brought up separate appeals from the same judgment. We have consolidated these appeals for the purpose of decision in one opinion.

The individual defendants here have two assignments of error: (1) to the entry of the judgment absolute on their appearance bonds, and (2) to the denial by Judge McConnell of their motion for a dismissal of the bond forfeitures entered against them and for a striking of the judgments *nisi* which were entered against them at the May 1965 Session. The individual defendants did not except to Judge McConnell's denial of their motion. "This Court has universally held that an assignment of error not supported by an exception is ineffectual." *Barnette v. Woody,* 242 N.C. 424, 88 S.E. 2d 223.

The corporate defendants here have one assignment of error, and that is to the entry of the judgment absolute on the appearance bonds they signed as surety.

It is well-settled law in this jurisdiction that an exception to the judgment presents the face of the record proper for review, and the review is limited to the questions whether error of law appears on the face of the record proper and whether the judgment is regular in form. 1 Strong's N. C. Index, Appeal and Error, § 21, and Supplement thereto, Appeal and Error, § 21.

The contention of the individual defendants and of the corporate defendants is this: When the Supreme Court in its decision on the appeal of the individual defendants reported in 263 N.C. 536, 139 S.E. 2d 870, quashed the indictments against them, there was then no formal and valid charge against the individual defendants, and the individual defendants and the corporate defendants were by this decision released and discharged from any liability on their appearance bonds. With this contention we do not agree.

The Court said in *S. v. Schenck,* 138 N.C. 560, 49 S.E. 917: "It is said by the highest authority that a recognizance (or bail bond) in general binds to three things: (1) to appear and answer either to a specified charge or to such matters as may be objected; (2) to stand and abide the judgment of the court; and (3) not to depart without leave of the court; and that each of these particulars are distinct and independent. This was said, too, with reference to a bail bond worded precisely like the one in this case. It was contended by counsel in that case, which we will presently cite, that the stipulation not to depart the court without leave was an unusual one and of no binding force whatever, and in answering this contention the Court said: 'That a stipulation of this kind was valid and obligatory at common law is not to be doubted. It was so declared more than thirty years ago by this Court after full consideration.' *S. v. Hancock,* 54 N.J. Law, 393. That was a well considered case and seems to be a conclusive authority against the appellant upon the main question presented in the record."

*S. v. Hancock,* 54 N.J. Law 393, 24 A. 726, is in point here. The facts of that case are as follows: One Bush, being under an indictment for a statutory offense, entered into a recognizance with the defendant, Hancock, as his surety, the recognizance containing a condition "for the appearance" of Bush "to answer said indictment on November 18th, 1890, and not to depart the court without leave." Before the day designated for trial, the indictment was quashed, and a motion was made thereupon to discharge Bush's bail. That motion was refused. Subsequently, Bush, having been again indicted

under the same statute in a different form, notice was given to his
surety to produce him before the court on a given day, and, de-
fault being made at the time specified, the recognizance was duly
forfeited of record. The position taken by Hancock is, that one of
the express stipulations of the obligation entered into by him should
be held by the court to be of no binding force whatever. He stipu-
lated that Bush "should not depart the court without leave." That
stipulation has been broken, and Hancock asserts that such breach
is nugatory inasmuch as the stipulation has no legal efficacy. The
opinion, written by Chief Justice Beasley, states:

> "That a stipulation of this kind was valid and obligatory at
> common law is not to be doubted. It was so declared more
> than thirty years ago by this court, after full consideration,
> in the case of the *State v. Stout,* 6 Halst. 125. It was there ju-
> dicially determined that a recognizance in general binds to
> three things — *first,* to appear to answer either to a specified
> charge, or to such matters as may be objected; *second,* to stand
> to and abide the judgment of the court, and, *third,* not to de-
> part without leave of the court; and that each of these par-
> ticulars was distinct and independent. The court further said
> that the party was not to depart until discharged, although no
> indictment should be found against him, or although he be
> tried and found not guilty by a jury.
>
> \*      \*      \*
>
> "Thus far the subject seems to be free from difficulty, but
> there is another aspect of it which has laid the ground for the
> principal argument in behalf of the defence. It is argued that
> our statute relating to recognizances has annulled the condition
> usually contained in them, to the effect that the culprit shall
> not depart the court without leave. The statutory language thus
> relied on is this: 'That every recognizance entered into, be-
> fore any court having criminal jurisdiction in this state, shall
> remain in full force and effect until the cause in which said
> recognizance shall be entered into, shall be finally determined
> or the same discharged by the order of the court.'
>
> "In the application of this statute to the case before the
> court, it was insisted by the counsel of the defendant that the
> present recognizance having been given in a proceeding under
> the indictment in question, when that indictment was quashed
> there was within the purview of the act a final determination
> of the cause to which the recognizance related. It was argued
> that the only cause pending before the court was the indict-

ment, and that to annul it was to annul and, consequently, to determine such cause.

"It will be observed that in this course of reasoning it is assumed that the indictment is synonymous with 'the cause,' but this is not to be admitted. The indictment is not 'the cause,' the accusation of criminality is the cause, and the indictment is an incident in pursuing the accusation. It is true that the term 'cause' sometimes expresses a suit or action, but it has a broader signification, which comprises the prosecution of a purpose or object, and it seems to me that the word 'cause' in this act is used in the sense expressed by the word prosecution. Taken in this signification, the cause cannot be said to be finally determined when the indictment is quashed, for the indictment is but a formal part of the prosecution.

"All rational intendment is adverse to the narrower and special meaning of the word cause as employed in the statute, for it is hardly conceivable that it was the legislative purpose to absolve a criminal who was under bail from all obligation to render himself in court in the event of the existence of a flaw in the indictment. In that way criminals of the highest grade and of the most dangerous character would often escape the pursuit of justice. In my opinion, the quashing of this indictment did not finally determine the cause — that is, the prosecution of this culprit.

"And, in addition to this view, it seems to me that the contention on the part of the state that the statute under consideration has not the effect of invalidating the legal operation of the recognizance in any particular, is well founded. The statutory language does not express, and there is no indication of, such a purpose. As we have seen, the common law bound the recognizor to appear up to the final determination of the prosecution, and, then, beyond that occurrence, to remain in the power of the court until he was discharged by the order of the court. The statute declares that the recognizance shall remain in full force until the final determination of the cause, and so far it is merely declaratory of the common law; but it does not say that the recognizance shall have no effect beyond the event so designated. The familiar rule is that statutes derogatory of the common law are to be construed strictly, and it is not perceived how, in the light of such a principle, it can be claimed that the effect which, on general legal rules, is to be given to this clause of the recognizance has been annulled by an act that has no reference to it in terms or by necessary im-

plication, and when such abolition would, in a large degree, be hostile to public policy.

"Let the Circuit Court be advised that it is the opinion of this court that, as the case stands upon the certificate before us, the procedure on this recognizance is sustainable."

The third headnote in the New Jersey Reports reads:

"A culprit giving a recognizance to appear to an indictment, and not to depart from the court without leave, is not discharged from his obligation by the quashing of the indictment."

In *United States v. White,* Case No. 16,678, 28 Federal Cases, Circuit and District Courts, 1789-1880, the Court held, as stated in the second headnote:

"A recognizance, to appear in court from day to day, to answer to a certain indictment, and not to depart without the leave of the court, is not discharged by the quashing of that indictment, but remains in force until the defendant has leave from the court to depart, and if a new indictment be found, he and his bail are bound for his appearance to answer such new indictment."

In *State v. Warden,* 119 Wash. 290, 205 P. 372, the first headnote in the Pacific Reporter reads:

"Obligation of bond given under Rem. & Bal. Code, § 1957, by one bound over to the superior court for trial conditioned to appear and answer the charge is not discharged by demurrer being sustained to the information first filed, because of its failure to state some of the statutory elements of the offense, but requires answer to the 'charge,' which is the crime, and not a particular pleading on amended information being filed."

In its opinion the Court said:

"The obligation of the bondsmen was to see that the defendant appeared in court and answered to the charge, which was that of rape, and they are not discharged on their obligation until the defendant has been released from that charge. The obligation was not to answer the complaint actually on file, but to answer to the charge of rape, whether presented by the complaint or subsequent information properly alleging the crime."

We have found meager authority on the precise question before us for decision. From the number of cases on the subject we have

read, it seems to be generally held that whether the quashing of an indictment will discharge the bail must be determined by the conditions of the bond in question. 8 C.J.S., Bail, § 79(d) ; 8 Am. Jur. 2d, Bail and Recognizance, § 137; Annotation 20 A.L.R. 604.

In *S. v. Eure,* 172 N.C. 874, 89 S.E. 788, the Court said:

> "An appearance bond by its terms, and under the uniform ruling of the Court, requires that the defendant appear term after term until he is discharged on a verdict of acquittal or by order of the court. An appearance bond is in lieu of custody in jail, in which case the defendant could not be released until discharged by order of the court."

In language crystal clear Mallory, as principal, and Resolute Insurance Company, as her surety, entered into an obligation firmly binding themselves to the State of North Carolina in the sum of $15,000, for which payment well and truly to be made, they bound themselves, their heirs, executors, administrators, and assigns, jointly and severally. This obligation has a condition expressed in language also crystal clear that whereas Mallory has appealed her conviction and sentence for kidnapping in cases Nos. 1088 and 1089 to the Supreme Court and the court has set her appearance bond at $15,000, "Now, therefore, if the above bounden defendant, May (Mae) Malory shall make her appearance AT THE MAY 4th, 1964 TERM OF UNION COUNTY SUPERIOR COURT AND AT EACH SUCCEEDING TERM OF SAID COURT PENDING THE FINAL DISPOSITION OF THE ABOVE CASES, AND SHALL NOT DEPART THE SAME WITHOUT LEAVE OF THE COURT, THEN THIS OBLIGATION SHALL BE VOID; OTHERWISE TO REMAIN IN FULL FORCE AND EFFECT." Her appearance bond "is in the nature of a conditional judgment that may be discharged by performance of conditions or enforced on breach of conditions." 8 Am. Jur., 2d, Bail and Recognizance, § 2. Reep, as principal, and Resolute Insurance Company as his surety, and Crowder, as principal, and Resolute Insurance Company as his surety executed appearance bonds identical with the appearance bond of Mallory, except that Reep's bond is in the amount of $7,500 and Crowder's is in the amount of $10,000. In language crystal clear Lowry, as principal, and Mrs. Marcia Lowry as his surety entered into an obligation acknowledging themselves indebted to the State of North Carolina in the sum of $5,000. This obligation has a condition expressed in language also crystal clear that "the conditions of the above obligation are such that if the above-bounden defendant John Cyrl Lowry shall make his personal appearance at the next term of this court, to be held on May 4, 1964 and at each succeeding term

of said Court pending the final disposition of the above cases, 19......, and not depart the same without leave, then this obligation to be null and void, otherwise to remain in full force and effect." Lowry or his wife posted a cash bond in the sum of $5,000.

This Court closed its opinion in the case quashing the indictments against the individual defendants with these words:

> "The indictments are quashed and the verdict and judgments are vacated for want of valid indictments to support them. *It does not follow that defendants are entitled to discharge and dismissal of the charges. If the State so elects it may send new bills and if they are returned true bills by an unexceptionable grand jury, defendants may be tried thereon for the offenses alleged."* (Emphasis supplied.)

It is manifest from the clear and express language of all four appearance bonds here and from the clear and express language of this Court in its opinion quashing the indictments against the defendants that the quashing of these indictments did not discharge the appearance bonds, but they remained in full force. When the new indictments were found against the four individual defendants here at the 3 May 1965 Session of Union County Superior Court, each of these four individual defendants at that session were called out in open court, and each one failed to answer, which was a breach of the conditions of each one of the four appearance bonds by each one of the four individual defendants. Pursuant to G.S. 15-113, notices of judgment *nisi* were issued on 10 May 1965 in respect to the Mallory, Reep and Crowder bonds, and served on 28 May 1965 on Richard F. Taylor, Attorney in Fact for Resolute Insurance Company, but the individual defendants could not be found for service on them of the notices. The contention of Resolute Insurance Company that notices of judgment *nisi* were not served upon it as required by G.S. 15-113, but only served on the Attorney in Fact is without merit. The three appearance bonds executed by Resolute Insurance Company are signed Resolute Insurance Company, "By Richard F. Taylor, Attorney in Fact." Service on him was service on Resolute Insurance Company. Further, the corporate defendants filed an answer to the notices of judgment *nisi,* which alleges no sufficient reason why the appearance bonds signed by Resolute Insurance Company should not be enforced for breach of their conditions as above set forth.

In respect to Lowry's cash bond, G.S. 15-113 `reads in relevant part:

"Provided, where the defendant deposits cash in lieu of bond or recognizance, upon his failure to appear for trial in accordance with the requirements of such cash bond then judgment *nisi* on the cash bond shall be entered and the defendant shall be charged with legal notice thereof without issuance or service of a *scire facias* or other notice and after thirty days or at the next term, whichever is later, judgment absolute forfeiting and condemning the cash bond shall be entered if the defendant then fails to appear or upon appearance fails to show legal excuse or other satisfactory explanation of his nonappearance at the term when judgment *nisi* was entered."

Judge McConnell properly and correctly entered judgment absolute on the three appearance bonds signed by Mallory, Reep, and Crowder respectively as principals and Resolute Insurance Company as surety on the bonds of each of them, and also in entering judgment absolute forfeiting and condemning Lowry's cash bond.

The contention of the individual defendants that "the failure of the solicitor to notify these defendants of his election to proceed with new indictments, and the fact that the solicitor had never sought to admit defendants to new appearance bonds, constitute a denial of their rights under Article I, Section 17, of the North Carolina Constitution, and of the due process clause of the Fourteenth Amendment to the United States Constitution," is totally without merit. The individual defendants had actual knowledge of the contents of the appearance bonds they signed as principals, and have actual knowledge of the opinion rendered in their case by this Court, or are charged with notice of it.

At the 30 August 1965 Session of the Superior Court of Union County, all four individual defendants were called and failed to answer, and so far as the record and briefs before us disclose all four are still outside the State of North Carolina. In passing we might add that G.S. 15-122 provides: "The bail shall have liberty, at any time before execution awarded against him, to surrender to the court from which the process issued, or to the sheriff having such process to return, during the session, or in the recess of such court, the principal, in discharge of himself. . . ."

Judge McConnell's judgment orders that the bonds of Mallory, Reep and Crowder, and the cash bond of Lowry, be, and they hereby are, forfeited absolutely. When this case is certified back to the Superior Court of Union County, the presiding judge shall add to the judgment language in substance as follows: It is further ordered that the State of North Carolina shall have and recover from Mallory as principal and Resolute Insurance Company as surety the

penalty of her appearance bond in the sum of $15,000, and similar language as to Reep's and Crowder's appearance bonds. See *S. v. Bradsher,* 189 N.C. 401, 404, 127 S.E. 349, 351; 18 Am. Jur., Pleading and Practice Forms, p. 189, "18:194. Order for Judgment on *Scire Facias* — Against Sureties on Forfeited Bond or Recognizance."

In the separate appeal of Resolute Insurance Company it appears from a stipulation by counsel of that company and the solicitor that Tidewater Bonding and Surety Agency, Inc., is an agent of Resolute Insurance Company.

The assignments of error by the individual defendants are overruled. The assignment of error by the corporate defendants is overruled.

The judgment below is

Modified and affirmed.