STATE OF NORTH CAROLINA v. LORENZO MACKINS

No. 8026SC61

(Filed 3 June 1980)

1. **Constitutional Law § 53– delay in trial caused by defendant – no denial of speedy trial**

   Defendant was not denied his right to a speedy trial where he was charged on 28 June 1978 and tried in September 1979, since the case was continued only once on the motion of the State, and defendant moved to continue the case twice, waiving his right to dismiss for failure to grant a speedy trial when he made his second motion to continue.

2. **Criminal Law § 66.1– identification testimony – opportunity for observation**

   Identification testimony of an assault victim was admissible where the victim was shot while he was in an automobile parked in the street; he testified that a street light and a light in the house from which the shots came were on; and though the record did not show how close the victim was to the person in the house, he was within the range of a .16 gauge shotgun.

3. **Searches and Seizures § 10– search of house without warrant – exigent circumstances**

   The fact that officers were standing under a light on a porch of a house from which a short time previously two shots had been fired, killing one person and seriously wounding another, was such an exigent circumstance that the officers were justified in entering the home and searching it to make sure no one else, including the officers, would be shot; and since the officers saw a shotgun in the house in plain view, evidence in regard to the gun was admissible.

APPEAL by defendant from *Howell, Judge.* Judgment entered 15 September 1979 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 21 May 1980.

Defendant was tried on bills of indictment for murder and assault with a deadly weapon with intent to kill inflicting serious injury. The evidence showed that on 27 June 1978, Tommy Lisenby was riding in an automobile with Ruth Wilson. Ms. Wilson was in the process of stopping the automobile so that Mr. Lisenby could get out when Mr. Lisenby heard what sounded as if it were the firing of a shotgun. He looked toward the house in front of which the automobile was coming to a stop. He testified the street light and the light in the house were on, and he was able to identify the defendant as the man who was standing at

the window. As Mr. Lisenby looked at the man in the window, he saw the flash of a gun, and he was shot. Mr. Lisenby also noticed that Ms. Wilson was slumped in her seat and was bleeding. He was able to leave the scene by pushing Ms. Wilson's foot on the accelerator. After the automobile had moved approximately one block, he stopped it and went into the house of a friend for help. The friend called the police who arrived a few minutes later. Ms. Wilson died.

Mr. Lisenby pointed out to the officers the house from which the shots had come and they surrounded the house. The officers called on the occupants of the house to come outside, and after they had been on the scene approximately one hour, the defendant came out of the house. As he was standing on the front porch, he was handcuffed by the officers. One of the officers stated that they "were sitting ducks" standing on the porch under the light, and the officers went inside the house and searched it. They found a .16-gauge shotgun propped against the wall. The defendant made a motion to suppress any evidence as to what the officers found after they entered the house. The court held a *voir dire* hearing out of the presence of the jury. The court found facts based on the evidence and concluded that the officers "had reasonable grounds to believe at the time [they] entered the house on Rosada Drive, that there might be danger to officers or other persons as a result of information . . ." they had received. The court allowed the testimony into evidence that the officers found a .16-gauge shotgun in the house.

The defendant was convicted of second degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. From a sentence imposed, the defendant appealed.

*Attorney General Edmisten, by Associate Attorney J. Chris Prather, for the State.*

*Robert M. Talford and Charles V. Bell for defendant appellant.*

WEBB, Judge.

[1]  The defendant's first assignment of error is to the court's failure to dismiss because the defendant was denied a speedy trial. Factors to be considered in determining whether a criminal action should be dismissed for failure to grant the defendant a speedy trial are: (1) the length of the delay; (2) the reason for the delay; (3) prejudice to the defendant; and (4) waiver by the defendant. *See State v. Brown*, 282 N.C. 117, 191 S.E. 2d 659 (1972). In the case sub judice, defendant was charged on 28 June 1978. In October 1978, defendant became disenchanted with his attorneys, and they moved to withdraw. In December 1978, defendant made a motion to have his bond reduced which was allowed. In January 1979, defendant moved for a continuance, which motion was granted. In March 1979, defendant had retained new counsel and made a motion to continue the case, waiving his right to dismiss for failure to grant a speedy trial. The case was set for trial in August 1979 and was continued on motion of the State because one of its witnesses was on vacation. The case was tried in September 1979. In the case sub judice, it appears that the case was continued only once on the motion of the State. We hold it was not error to deny the defendant's motion to dismiss for failure to grant a speedy trial.

[2]  The defendant's second assignment of error is to the court's allowing the identification testimony of Tommy Lisenby. Defendant relies on *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967). In *Miller*, our Supreme Court held that identification testimony should have been excluded as having no probative force when all the evidence showed the witness attempted to identify a person he had observed from a distance of 286 feet at night. In this case, Mr. Lisenby testified a street light and a light in the house were on. The record does not disclose how close Mr. Lisenby was to the person in the house, but he was within range of a .16-gauge shotgun. We believe *State v. Miller, supra,* is distinguishable from the case sub judice. We hold the identification testimony of Mr. Lisenby was properly admitted into evidence.

[3]  Defendant also assigns as error the admission of the testimony that the officers found the shotgun in the house. The defendant contends the shotgun was the fruit of an illegal

search and should have been excluded under *Payton v. New York*, U.S., 100 S.Ct. 1371, 63 L.Ed. 2d 639 (1980). *Payton* held that an entry into a home to make a routine arrest for a felony without a warrant violates the Fourth Amendment to the United States Consitution, made applicable to the states by the Fourteenth Amendment. In that case the Supreme Court struck down a New York statute, very similar to G.S. 15A-401(b) and (e), allowing entry into homes without a warrant to make felony arrests. *Payton* pointed out that there were no exigent circumstances in that case justifying an entry without a warrant. In the case sub judice, the officers did not enter to make an arrest. We hold there were exigent circumstances justifying entry. The officers were standing under a light on a porch of a house from which a short time previously two shots had been fired, killing one person and seriously wounding another. We hold this was such an exigent circumstance that the officers were justified in entering the home and searching it to make sure no one else, including the officers, would be shot. As they saw the shotgun in plain view, evidence in regard to the shotgun was admissible.

The defendant also assigns as error the admission into evidence of certain pictures. We hold these were properly admitted to illustrate the testimony of the witnesses.

The defendant's last assignment of error is to the denial of his motion to dismiss both charges. We find no error in the denial of this motion.

No error.

Judges MARTIN (Harry C.) and WELLS concur.