STATE OF NORTH CAROLINA v. YOULES JOHNSON, JR.

No. 8212SC828

(Filed 4 October 1983)

Searches and Seizures § 10— warrantless entry into house—seizure of heroin in plain view—absence of exigent circumstances

No exigent circumstances justified an officer's warrantless entry into defendant's house and his seizure of heroin in plain view in the house, and the heroin was inadmissible in defendant's trial, where the officer had warrants for the arrest of a female and a male; the officer had reasonable cause to believe that the female and the male could be found at defendant's house; the officer had photographs showing the heads and faces of the two persons to be arrested; when the officer approached defendant's house with the arrest warrants, there were six persons standing in the driveway area, and one female began to run to the rear of the house; the officer pursued such female because he thought she might be one of the persons to be arrested, although she was not actually such a person; and the officer followed the fleeing female through the rear door and into the den area of defendant's house where he saw packets containing heroin.

Judge HEDRICK dissenting.

APPEAL by defendant from *Hobgood (Robert), Judge.* Judgment entered 16 February 1982 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 10 February 1983.

On 1 December 1980, defendant was charged in a proper bill of indictment with felonious possession of more than 14 but less than 28 grams of heroin. Defendant was found guilty of the in-

dicated offense by a jury. Judgment in accordance with the jury verdict was entered and defendant was sentenced to a prison term and fined one hundred thousand dollars ($100,000). Defendant appealed from the judgment.

On 17 July 1981, defendant had made a pretrial motion pursuant to G.S. 15A-974 to suppress all of the evidence found in a search of his home on 17 September 1980. This evidence formed the basis of defendant's arrest, indictment and conviction. In his motion, defendant contended that the search of his home was conducted without a search warrant and therefore violated his constitutional rights.

A *voir dire* hearing on the motion was held on 6 August 1981. On 9 February 1982, Judge Winberry entered an order containing the following findings of fact:

> That the parties hereto stipulated that the residence located at 1605 Grandview Drive, Fayetteville, North Carolina, is owned and occupied by the Defendant, Youles Johnson, Jr.

> That J. D. Bowser is a Deputy Sheriff assigned to the City/County Bureau of Narcotics and that he has known the Defendant, Youles Johnson, Jr. for approximately 1½ years and knew that he resided at 1605 Grandview Drive, Fayetteville, North Carolina.

> That about noon on Wednesday, September 17, 1980, Deputy Bowser was contacted by a Bondsman named Collins from Wake County. That Mr. Collins provided Deputy Bowser with certified copies of arrest warrants from Wake County for two (2) persons, Edith Mae Williams and John Wortham. That the arrest warrants for Williams and Wortham were for failure to appear upon charges of possession of heroin and possession of phenmetrazine. That, additionally, there were warrants for Wortham for assault on a Police Officer by firing a gun and for being an habitual felon.

> That the Bondsman, Collins, requested assistance from Deputy Bowser in apprehending Williams and Wortham and advised Deputy Bowser that he had reliable information that both Williams and Wortham were at 1605 Grandview Drive at that time. That Deputy Bowser and Sgt. Baker at the

City/County Narcotics Bureau verified the information re-
ceived from Mr. Collins by placing various telephone calls
and by Sgt. Baker going to the area of 1605 Grandview
Drive.

That Mr. Collins provided Deputy Bowser with a photograph
showing the head and face of a black female said to be Edith
Mae Williams and with a photograph showing the head and
face of a black male said to be John Wortham. That Deputy
Bowser received no other description of Williams and Wor-
tham.

That, at approximately 3:45 p.m., Deputy Bowser in an un-
marked car accompanied by uniform officers in marked patrol
cars, went to the residence at 1605 Grandview Drive. That
Mr. Collins was not with Deputy Bowser at this time. Upon
his arrival, Deputy Bowser observed approximately six (6)
people standing in the driveway area of the house. These
people consisted of several black males and several black
females. Deputy Bowser was approximately six feet from the
nearest person when his car was brought to a halt and he got
out. That the marked patrol cars also came to a halt.

That as soon as he got out of his car, he observed a black
female begin to run toward the rear of the residence. Deputy
Bowser began to pursue her because he thought she might be
Edith Mae Williams. As Deputy Bowser ran behind her into
the back yard, he identified himself as a police officer and
ordered her to halt by calling out, "police, halt." That Deputy
Bowser hollered, "halt, police officer," several times as he
ran. That the black female did not halt, but proceeded into
the back yard of the residence and ran though [sic] the back
door into the house. That Deputy Bowser was approximately
ten feet behind her and followed her into the house, through
a utility room and into the den area of the house where she
stopped. That there were two (2) black females and two (2)
black males also in the den.

That Officer Bowser saw a tinfoil packet on the floor with a
white powdery substance spilling out of it. Near the black
female he had followed into the house, Deputy Bowser
observed a clear plastic packet containing white powder and
another tinfoil packet containing white powder. That one of

the black females in the room which Deputy Bowser entered was Edith Mae Williams. That the black female who ran into the house turned out to be Ruby Wright. That Deputy Bowser determined that Edith Mae Williams weighed approximately 200 pounds and was approximately 5½ feet tall. That Ruby Wright weighs approximately 140 pounds and is 5/7″ tall.

That Deputy Bowser did not have a search warrant to search the residence of Youles Johnson, Jr. for Edith Mae Williams and John Wortham. That no one gave Deputy Bowser permission to enter the residence.

Based on these findings, the court concluded:

(1) That Deputy Bowser had probable cause to believe that Edith Mae Williams and John Wortham were located at the residence at 1605 Grandview Drive.

(2) That under all the circumstances as appeared to him at the time, and particularly in light of the meager descriptions provided of Williams and Wortham and the nature of the assault charges against Wortham, Deputy Bowser acted reasonably in pursuing the black female into the back yard and into the house. That exigent circumstances existed which justified Deputy Bowser's entry into the residence at 1605 Grandview Drive, even though he had no search warrant for the residence.

(3) That the discovery of a controlled substance in the residence at 1605 Grandview Drive was inadvertent.

(4) That the Defendant's rights under the Constitution of the United States, and the Constitution of the State of North Carolina and the General Statutes of North Carolina were not violated.

In accordance with these conclusions, the court denied defendant's motion to suppress.

*Attorney General Edmisten, by Assistant Attorney General Henry T. Rosser, for the State.*

*Brown, Fox and Deaver, by Bobby G. Deaver, for defendant appellant.*

JOHNSON, Judge.

The facts in this case, recited in the above-quoted order, are not in dispute. While defendant excepted to several rulings by the trial court, the only assignment of error advanced by defendant on appeal concerns the denial of his pretrial motion to suppress evidence. Defendant's exception was only an exception to the entry of the order. Therefore, the assignment of error, the exception on which it is based and the appeal itself present for our consideration the question of whether the facts found by the court support the conclusions of law drawn therefrom and the ruling denying defendant's motion. *Hinson v. Jefferson,* 287 N.C. 422, 215 S.E. 2d 102 (1975); *State v. Mallory,* 266 N.C. 31, 145 S.E. 2d 335 (1965), *cert. denied sub nom. Mallory v. North Carolina,* 384 U.S. 928, 16 L.Ed. 2d 531, 86 S.Ct. 1443 (1966); 1 Strong's N.C. Index 3d Appeal & Error, § 28.

Defendant argues that the evidence he seeks to suppress was discovered in a search that violated his rights under the Fourth Amendment and that the trial court should therefore have allowed his motion to suppress the evidence at trial. We agree.

With regard to the first conclusion of law in the Order, we may assume without deciding, since there was no exception to the findings of fact, that there was probable cause to believe that Williams and Wortham were located at defendant's residence. It was the trial court's second conclusion of law that was determinative of its ruling on the motion and it is our disagreement with that conclusion that is determinative of this appeal.

The Fourth Amendment guarantees "[t]he right of the people *to be secure in their persons, houses, . . .* against unreasonable searches and seizures." U.S. Const. Amend. IV. To protect this right, the U.S. Supreme Court has consistently held that the entry by law enforcement officers into a house to conduct a search is unreasonable under the Fourth Amendment unless done pursuant to a warrant. *See Payton v. New York,* 445 U.S. 573, 63 L.Ed. 2d 639, 100 S.Ct. 1371 (1980); *Elkins v. United States,* 364 U.S. 206, 4 L.Ed. 2d 1669, 80 S.Ct. 1437 (1960). The constitutional requirement of a warrant is subject to certain exceptions, recognized by the Supreme Court and the courts of this state, which preclude its *per se* application. *Chimel v. California,* 395 U.S. 752, 23 L.Ed. 2d 685, 89 S.Ct. 2034 (1969); *State v. Allison,*

298 N.C. 135, 257 S.E. 2d 417 (1979); *State v. Mackins,* 47 N.C. App. 168, 266 S.E. 2d 694, *cert. denied,* 301 N.C. 102 (1980). One of the exceptions, the one on which the State relies, is where exigent circumstances exist. *State v. Allison, supra.*

In the case before us, law enforcement officers had warrants for the arrest of Edith Mae Williams and John Wortham. The officers did not have a warrant for the arrest of Youles Johnson, defendant, or for the search of his house. The Fourth Amendment challenge to the search in question is raised by a person, not named in any warrant, who was indicted and convicted on the basis of evidence discovered by police officers who, without consent, entered his home in the course of executing arrest warrants for persons who did not live there.

Thus, the issue to be resolved is whether, on the facts of this case, the arrest warrants for Williams and Wortham adequately protected the right of the defendant to be free from an unreasonable search of his home and seizure of evidence therefrom. Phrased differently, the issue is whether the trial court properly concluded that the circumstances surrounding the execution of the arrest warrants were of such compelling exigency as to justify a warrantless search of defendant's home.

The United States Supreme Court recently considered this question on facts only slightly different from those of this case in *Steagald v. United States,* 451 U.S. 204, 68 L.Ed. 2d 38, 101 S.Ct. 1642 (1981). In *Steagald,* the Supreme Court pointed out that Fourth Amendment rights are personal in nature. Therefore, the Court said, a warrant for the arrest of one person does not provide adequate protection of a third party's right to be free from unreasonable searches, even when it is necessary that the arrest warrant be executed in the house of the third party. The Court said that a search warrant would generally be required to enter the house of a third party in such a situation. However, the Court recognized exigent circumstances as one exception to this requirement and cited "hot pursuit" of a fugitive as an example of such circumstances.

On the facts of *Steagald,* the Supreme Court held that the search in question violated the defendant's Fourth Amendment rights and that the evidence seized as a result of the search could not be used against him at trial. The same legal principles relied

on by the Court in *Steagald* apply to the case before us. The reasonableness of a search, and the existence of exigent circumstances are factual determinations that must be made on a case by case basis. *See State v. Reams*, 277 N.C. 391, 178 S.E. 2d 65 (1970), *cert. denied sub nom. Reams v. North Carolina*, 404 U.S. 840, 30 L.Ed. 2d 74, 92 S.Ct. 133 (1971). The cases cited by both the State and defendant in their respective briefs can only be considered as illustrations of the application of the legal principles involved but not as controlling the result here.

In its argument, the State relies on the "hot pursuit" by Officer Bowser of a person he suspected to be the subject of one of the arrest warrants to justify his intrusion into defendant's house and the seizure of the evidence sought to be suppressed. In so doing, the State seeks to focus our attention on events that occurred after the point in time when a judgment as to whether a search warrant was required should already have been made. It is not apparent from the record that such a judgment was ever made. Whether the failure to procure a search warrant for defendant's house was the result of a conscious judgment of the police or whether it was due to a failure to recognize the necessity for such a judgment, it was an error that had occurred before Officer Bowser began his "hot pursuit."

Federal and state courts, when considering situations allegedly involving exigent circumstances, incorporate into their analysis some consideration of whether the police in those fact situations had an opportunity to procure a search warrant. *See e.g., U.S. v. Calhoun*, 542 F. 2d 1094 (9th Cir. 1976) *cert. denied sub nom. Stephenson v. United States*, 429 U.S. 1064, 50 L.Ed. 2d 781, 97 S.Ct. 792 (1977); *U.S. v. Houle*, 603 F. 2d 1297 (8th Cir. 1979) and *Steagald v. United States, supra.* In reconciling the decisions of the various state and federal courts, LaFave has made the following instructive analysis:

A "planned" arrest is one which is made after a criminal investigation has been fully completed at another location and the police made a deliberate decision to go to a certain place, either the arrestee's home or some other premises where he is believed to be, in order to take him into custody. . . . Illustrative . . . are the facts of the Court's recent decisions on the warrant requirement, *PAYTON v. NEW YORK* and

> STEAGALD v. UNITED STATES. . . . Courts have understand-
> ably been reluctant to accept police claims of exigent circum-
> stances in these situations, for it ordinarily appears that
> whatever exigencies thereafter arose were foreseeable at the
> time the arrest decision was made, when a warrant could
> have readily been obtained. In the "planned" arrest situation,
> then, the only exception to any existing warrant requirement
> would be the presence of exigent circumstances prior to the
> time the officers went out into the field for the purpose of
> making the arrest.

LaFave, *Search and Seizure; A Treatise on the Fourth Amend-
ment* § 6.1 (Supp. 1983) (footnotes omitted).

From the record here, it is apparent that over three and a
half hours elapsed between the time that the police were supplied
with arrest warrants and the time the arrest was made. Although
copies of the warrants are not in the record, it appears that the
police were supplied at the same time with the information that
the person named in the arrest warrants could be found at de-
fendant's home. Officer Bowser testified that he had received in-
formation from the bondsman, Sgt. Baker and several other
sources that Williams and Wortham were located at defendant's
residence; that he knew defendant and knew his address and that
his specific purpose in going to defendant's residence was to ar-
rest Williams and Wortham. From the time the warrants were
received until they were executed, no attempt was made to pro-
cure a warrant authorizing entry into defendant's house. Thus, it
would appear that the arrest raid was in fact a planned raid.
There was ample time to secure a search warrant and ample
reason to anticipate the need for one. That the subject of the ar-
rest warrants were believed to be at defendant's house is suffi-
cient by itself to put the police on notice that they might need to
gain entry to the house in order to effect the arrest. With these
facts in mind, we need not consider whether Officer Bowser was
in "hot pursuit" and whether that alone was sufficient to justify
his entry into defendant's home. The need for a search warrant
should have been anticipated in this case.

Because it is necessary that our decision stand on the specific
facts contained in the record, we have not emphasized the factual
similarity between this case and *Steagald.* The Court in *Steagald,*

however, did make some general comments that directly support our decision here:

[I]n those situations in which a search warrant is necessary, the inconvenience incurred by the police is simply not that significant. First, if the police know of the location of the felon when they obtain an arrest warrant, the additional burden of obtaining a search warrant is miniscule. The inconvenience of obtaining such a warrant does not increase significantly when an outstanding warrant already exists. . . . In routine search cases such as this, [where there are no exigent circumstances] the short time required to obtain a search warrant will seldom hinder efforts to apprehend a felon. . . .

Whatever practical problems remain, however, cannot outweigh the constitutional issues at stake. Any warrant requirement impedes to some extent the vigor with which the Government can seek to enforce its laws, yet the Fourth Amendment recognized that this restraint is necessary to protect against unreasonable searches and seizures.

*Steagald v. United States,* 451 U.S. at 222, 68 L.Ed. 2d at 51-52, 101 S.Ct. 1642.

On the basis of the facts of this case, we conclude that no exigent circumstances existed that would justify the warrantless entry into defendant's house and the later seizure of the evidence which defendant seeks to suppress. The evidence was seized in a manner that violated defendant's Fourth Amendment rights and the trial court's failure to grant defendant's motion to suppress the evidence was, therefore, error. The judgment of the trial court is accordingly

Reversed.

Judge BRASWELL concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

I respectfully dissent from the majority decision that no exigent circumstances existed justifying entry into the house owned

and occupied by defendant and seizure of the drugs found in plain view. In my opinion, the officer was where he had a right to be and doing what he had a right to do, and Judge Winberry did not err in denying defendant's motion to suppress. The case relied on by the majority, *Steagald v. United States*, 451 U.S. 204, 68 L.Ed. 2d 38 (1981), while similar in many respects to the instant case, is, in my opinion, clearly distinguishable in the very manner Justice Marshall went to great lengths to point out: "We have long recognized that such 'hot pursuit' cases fall within the exigent-circumstances exception to the warrant requirement . . . and therefore are distinguishable from the routine search situation presented here." *Id.* at 218, 68 L.Ed. 2d at 49. The Court went on to say:

> We are convinced . . . that a search warrant requirement will not significantly impede effective law enforcement efforts. . . . [The] exigent-circumstances doctrine significantly limits the situations in which a search warrant would be needed. For example, a warrantless entry of a home would be justified if the police were in "hot pursuit" of a fugitive.

*Id.* at 221, 68 L.Ed. 2d at 51.

In the present case, the officer had a reasonable description of the person he sought. When he approached the house with an arrest warrant, he saw a person fitting that description break away from her companions and run to the back of the house and through the door. Under these circumstances the officer was not only justified in pursuing the person into the house to make an arrest—he had a positive duty to do so. The fact that the person he pursued was not the one for whom the warrant was issued is of no legal significance under the circumstances here presented. The record discloses the officer had probable cause to believe that the person he pursued was a fleeing felon, and, indeed, the person he sought was within the house. Furthermore, under the exigent circumstances depicted by this record, the officer had a duty to seize the contraband, which was in plain view. I vote to find no error.